# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**AMY KAROZOS**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**PATRICK M. RHODES**
Indiana Department of Child Services
Indianapolis, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

**FILED**
Jun 13 2012, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE MATTER OF:<br>B.N. AND H.C.<br>CHILDREN IN NEED OF SERVICES | )<br>)<br>)<br>) |
| M.C. (Mother) | )<br>) |
| Appellant-Respondent, | )<br>) |
| vs. | )  No. 49A02-1110-JC-1025<br>) |
| MARION COUNTY DEPARTMENT OF<br>CHILD SERVICES, | )<br>)<br>) |
| Appellee- Petitioner, | )<br>) |
| and | )<br>) |
| CHILD ADVOCATES, INC; | )<br>) |
| Appellee-Guardian Ad Litem. | )<br>) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Diana Burleson, Magistrate
The Honorable Gary Chavers, Judge Pro Tempore
Cause Nos. 49D09-1105-JC-021271 & 49D09-1105-JC-021272

June 13, 2012

OPINION - FOR PUBLICATION

**VAIDIK, Judge**

## Case Summary

M.C. ("Mother") appeals from the juvenile court's determination that her son and daughter are Children in Need of Services ("CHINS"). Mother contends that the evidence is insufficient to support the juvenile court's conclusion that her children's physical and mental health were seriously impaired or endangered because of her inability, refusal, or neglect to supply them with necessary food, clothing, shelter, medical care, education, or supervision. We conclude that the evidence in this case is indeed insufficient to support the juvenile court's determination that B.N. and C.H. are CHINS, and we therefore reverse.

## Facts and Procedural History

On May 26, 2011, police stopped Mother in the parking lot of a gas station. When police searched her car, they found oxycodone, Xanax, and marijuana. Her seven-year-old son B.N. was in the back seat of the vehicle. Police also discovered that Mother's driver's license was suspended. Mother was taken into custody by police and charged with possession of a controlled substance (oxycodone) and possession of marijuana. The Department of Children and Family Services ("DCS") took custody of B.N. and Mother's three-year-old daughter, H.C.

On May 31, DCS filed a petition alleging that B.N. and H.C. were CHINS because Mother had failed to provide them with a "safe and appropriate living environment free from drugs." Appellant's App. p. 29. Specifically, the petition alleged that the children

were CHINS under Indiana Code section 31-34-1-1, which provides that a child is a CHINS if "[t]he child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision."

Because Mother wished to have B.N. and C.H. returned to her care, she voluntarily submitted to four drug screens in June and July. At each drug screen, Mother provided DCS staff with current prescriptions for oxycodone and Xanax. Mother tested negative at each drug screen, and B.N. and H.C. were returned to her care in mid-July. After their return, Mother voluntarily submitted to a fifth drug screen, which was also negative.

A fact-finding hearing was held on October 17.[1] At the hearing, DCS introduced evidence of Mother's May 26 arrest as well as DCS's previous involvement with Mother and B.N. four years earlier—in 2007, DCS had substantiated claims of domestic violence by the children's father, William Neighbors, against Mother.

Michelle Jeffries, a DCS family case manager, testified to her involvement with Mother since her May 26 arrest. FCM Jeffries informed the court of Mother's voluntary, negative drug screens. Tr. p. 40. She also told the court that Mother had voluntarily participated in home-based services, though at the time of the hearing she was no longer doing so. Jeffries also said that DCS made a referral for a substance-abuse assessment for Mother and mental-health assessments for the children; however, those assessments

---

[1] At that time, Mother had been charged with possession of a controlled substance and possession of marijuana but had not been convicted of any charges.

had not been completed. Jeffries also stated that Mother had recently been ordered to undergo random drug screenings, but Mother, who did not have a valid driver's license, had not reported to these screenings. Jeffries also told the court that Mother, B.N., and C.H. were living in a house that Mother was renting and that Mother was employed. Jeffries also said that to her knowledge, Mother no longer saw Neighbors. *Id.*

DCS summarized their concerns regarding Mother as follows: Mother had been arrested and charged with possession of a controlled substance (oxycodone) and possession of marijuana and had admitted smoking marijuana in the past, Mother had not completed recent random drug screens, and visits to Mother's current home, which she rented, indicated that other individuals may have been staying there.

Mother presented the court with a prescription for oxycodone, which was valid at the time of her arrest. Though she did not produce a prescription for Xanax, Mother testified that she had been taking Xanax and oxycodone with valid prescriptions since 2007. *Id.* at 65. Mother explained that the medication helped her cope with anxiety after the 2007 domestic-violence incident with Neighbors. She also confirmed that she had a protective order against Neighbors and no longer saw him. *Id.* at 49.

That same day, the juvenile court entered an order finding B.N. and C.H. to be CHINS. The order included the following factual findings:

> 1. [H.C] is a minor whose date of birth [is] December 5, 2007.
> 2. [B.N.] is a minor whose date of birth is July 31, 2004.
> 3. Their Mother is [M.C.].
> 4. Their Father is [Mr. Neighbors].
> 5. On May 26, 2011[,] [Mother] was arrested in her car for possession of a controlled substance, oxycodone, and possession of marijuana. [B.N.] was in the car with her when she was arrested.

4

6. [Mother] admitted that she used marijuana 2 times a day, but that she had a valid prescription for the oxycodone.

7. She also knew that at the time of her arrest, her driver's license was suspended.

8. [Mother] has a prior history with DCS regarding domestic violence between [Mother] and Mr. Neighbors. In 2007, an informal adjustment was completed by [Mother].

\* \* \* \* \*

11. Since the beginning of this case the DCS FCM [Jeffries] has asked for but has not received the following: proof of a valid prescription for oxycodone (was presented in court at the fact finding); proof of a valid prescription for Xanax; proof of employment, a copy of her lease, and proof that [H.C.] is enrolled in Head Start.

12. [Mother] did not have her children complete a mental health assessment because she was confused about the referral.

13. [Mother] participated voluntarily with home based before the children were returned home, but after the children were moved back home she was confused about meeting with them.

Appellant's App. p. 20-21.

Mother now appeals.

**Discussion and Decision**

Mother contends that the evidence is insufficient to support the juvenile court's finding that B.N. and C.H. are CHINS.

Because a CHINS proceeding is a civil action, the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. Ind. Code § 31-34-12-3; *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). Upon review of a juvenile court's CHINS determination, we consider only the evidence most favorable to the judgment and the reasonable inferences therefrom. *In re T.S.*, 881 N.E.2d 1110, 1112 (Ind. Ct. App. 2008). We neither reweigh the evidence nor reassess the credibility of the witnesses. *Id.* Here, the juvenile court made findings of fact and conclusions of law in

adjudicating the children CHINS. When a juvenile court enters specific findings and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside the juvenile court's judgment only if it is clearly erroneous. *Id.*

The juvenile court determined that the children were CHINS according to Indiana Code section 31-34-1-1, which provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
> > (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
> > (2) the child needs care, treatment, or rehabilitation that:
> > > (A) the child is not receiving; and
> > > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

In finding that B.N. and C.H. were CHINS under this section, the juvenile court relied on the following facts: Mother was arrested and charged with possession of a controlled substance (oxycodone) and possession of marijuana, she admitted using marijuana in the past, her driver's license was suspended, she had previous involvement with DCS regarding domestic violence with the children's father, she had not provided all documentation requested by DCS, and she had not completed the referrals made by DCS or the services she had volunteered for.

6

We first examine whether the juvenile court's findings were supported by the evidence. Specifically, Mother argues that Finding 11 is not supported by the evidence. The finding reads:

> Since the beginning of this case the DCS FCM [Jeffries] has asked for but has not received the following: proof of a valid prescription for oxycodone (was presented in court at the fact finding); proof of a valid prescription for Xanax; proof of employment, a copy of her lease, and proof that [H.C.] is enrolled in Head Start.

Appellant's App. p. 20. Mother directs our attention to the testimony of FCM Jeffries. Jeffries testified that at each drug screen, Mother presented a valid prescription for both oxycodone and Xanax. Jeffries stated that Mother had not given her documentation showing that Mother had a valid prescription for oxycodone *at the time she was arrested.* However, Mother presented this documentation to the court on October 17. Moreover, Jeffries clearly stated that Mother had provided her a letter showing that she was employed. *See* Tr. p. 41. From this, we conclude that within Finding 11, the juvenile court's findings regarding oxycodone and proof of employment are not supported by the evidence.

We must next determine whether the remaining findings support the court's judgment. We conclude that they do not. The first prong of Section 31-34-1-1 requires DCS to show that a child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision. The evidence presented at fact-finding does not meet this

7

burden.[2] Although Mother was charged with possession of marijuana and admitted using marijuana in the past, she tested negative at each drug screening. Further, Mother presented the court with a prescription for oxycodone, which was valid at the time she was arrested, and Mother was not charged with any crime relating to her possession of Xanax.

The other facts relied upon by the juvenile court also fail to establish that the children were impaired or endangered. With respect to Mother's participation in services, Mother volunteered to participate in services after her arrest; these were not mandatory services required by DCS. To that end, the juvenile court did not find that Mother refused to participate in services, only that she was confused about what participation was required of her.[3] Mother's previous involvement with DCS stemmed from a domestic-violence incident four years ago in which the children's father, William Neighbors, was violent toward Mother. Jeffries testified that to her knowledge, Mother no longer saw Neighbors. Mother confirmed this and further testified that she had a protective order against Neighbors. Finally, there was no evidence that Mother's suspended driver's license had any effect on the condition of the children.

In sum, there was simply no evidence that the children's physical or mental condition was seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of Mother to supply the children with necessary food, clothing, shelter,

---

[2] DCS asks that we consider evidence presented at pretrial hearings and included in the juvenile court's dispositional order. We decline to do so. We consider only the evidence presented at fact-finding and relied upon by the juvenile court in determining that B.N. and C.H. are CHINS.

[3] Mother's participation in services, to the extent it would be relevant, would go to whether coercive intervention of the court was needed. We need not reach the second prong of Indiana Code section 31-34-1-1, however, as we conclude that DCS failed to prove the first prong of the section.

medical care, education, or supervision.  We therefore conclude that the juvenile court's determination that the children are CHINS was clearly erroneous.

Reversed.

CRONE, J., and BRADFORD, J., concur.