**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**AMY KAROZOS**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
Indiana Department of Child Services
Indianapolis, Indiana

**PATRICK RHODES**
Indiana Department of Child Services
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

FILED
Dec 17 2012, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| In the Matter of B.A., Child Alleged To Be In Need of Services, | ) ) ) |
| C.A., Father, | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) No. 49A02-1203-JC-252 ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn Moores, Judge
The Honorable Danielle Gaughan, Magistrate
Cause No. 49D09-1110-JC-39013

**December 17, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

C.A. appeals the juvenile court's order finding B.A.[1] to be a Child in Need of Services ("CHINS") under Indiana Code section 31-34-1-1. He raises the following restated issue for our review: whether the juvenile court erred in finding B.A. to be a CHINS where the evidence presented did not prove by a preponderance of the evidence that B.A. was a CHINS because his physical or mental condition was seriously impaired or endangered as a result of C.A.'s inability, refusal, or neglect to supply B.A. with necessary food, clothing, shelter, medical care, education, or supervision.

We affirm.

## FACTS AND PROCEDURAL HISTORY

B.A. was abandoned by his biological mother around the age of five years old. Prior to this, B.A. was exposed to significant acts of prostitution and pornography by his mother and was repeatedly raped by one of mother's boyfriends. Around the age of nine years old, B.A. was adopted by C.A. B.A. suffers from gender identity issues and has been both a victim and perpetrator of sexual abuse, including abuse perpetrated by two older foster children while in C.A.'s care. C.A. described his discipline as being "strict" and spanked B.A. with a paddle. *Resp't's Ex*. A at 120. Three years prior to the commencement of this case, B.A. began to exhibit behavior issues while in C.A.'s care, including storing food and trash around the house. B.A. also started exhibiting physical aggression and throwing tantrums at school. He was once suspended from school for two to three days.

---

[1] Although appellate counsel was appointed for B.A. at the request of DCS, a notice of non-participation in appeal was filed by appointed counsel, and accordingly, B.A. does not participate in the this appeal.

2

Around September 2010, B.A. was admitted to Community North Hospital for approximately nine or ten days of treatment because of writing a death threat letter. After being discharged from treatment, B.A. was on medication that led to his behavior being more reserved, and he did not exhibit any more behavior issues until February 2011. At that time, B.A. was picked up by the police and taken back to Community North Hospital, where a referral was made for B.A. to receive treatment at Resource, a residential treatment facility in Indianapolis. During this time that B.A. was being treated at Resource, C.A. participated in B.A.'s therapy sessions every other week, with some of the sessions occurring telephonically. Resource's initial permanency plan for B.A. was for him to be returned to C.A.'s care at the end of September 2011, but there were concerns that reunification might not be appropriate or safe for either B.A. or C.A. because "much therapeutic work needs to be done by both [B.A.] and his father, in order to prepare them for reunification." *Id.* at 154.

On September 16, 2011, the Indiana Department of Child Services ("DCS") received a report that B.A., age fifteen at the time, was at Resource, and C.A. was unwilling to either pick up B.A. from the facility or assist B.A. in his treatment. *Tr.* at 4. Resource was ready to discharge B.A. from their services and return him to C.A.'s care. The government assistance used, in part, for B.A.'s treatment was expiring, leaving C.A. with the responsibility to pay for the continued treatment costs of B.A. *Id.* at 11. C.A. informed DCS that he was unwilling to take B.A. back into his care due to C.A.'s concerns for his own safety and because C.A. did not feel like B.A.'s treatment was progressing to his standards. *Id.* at 5-6.

On October 7, 2011, DCS filed a petition alleging B.A. to be a CHINS pursuant to Indiana Code section 31-34-1-1, stating:

> On or about October 7, 2011, [DCS] determined, by its Family Case Manager . . . the child to be in need of services because his father, [C.A.], has failed to provide the child with a safe and appropriate living environment. [C.A.] is unwilling to have [B.A.] return [to] his residence upon discharge from Resource Treatment Facility. [C.A.] displays animosity towards his son, has a lack of concern for [B.A.'s] treatment goals, and has not consistently participated with [B.A.'s] therapy at Resource. In addition, [C.A.] fears for his safety because of [B.A.'s] aggressive, violent, and homicidal behaviors. Due to [C.A.'s] refusal and inability to care for [B.A.] or to meet his needs and provide the child with a safe and appropriate home, the coercive intervention of the Court is necessary to ensure the child's safety and well being.

*Appellant's App.* at 20-21. On October 12, 2011, DCS assumed responsibility for B.A.'s residential treatment, and B.A.'s permanency plan at Resource changed from being discharged to C.A. to remaining at Resource. Early in the CHINS case, C.A. told the DCS family case manager that he was not interested in visiting B.A., participating in B.A.'s therapy, or working toward reunification with B.A. *Tr.* at 16. Throughout the duration of the CHINS case, C.A. did not participate in B.A.'s treatment or visit him at Resource or the Youth Opportunity Center, where B.A. was moved in January 2012. C.A. stated that he feared B.A. and feared for his physical safety with B.A. in the home. *Id.* at 19-20, 31.

Prior to a fact-finding hearing, C.A. notified the juvenile court that he intended to argue that B.A. should be found to be a CHINS under Indiana Code section 31-34-1-6 because he was danger to himself or others, and not under Indiana Code section 31-34-1-1 as alleged by DCS. B.A. was appointed a public defender. The fact finding hearing was held on February 6, 2012, at the conclusion of which, the juvenile court found B.A. to be a

CHINS, but took under advisement whether he was a CHINS under Indiana Code section 31-34-1-1 or section 31-34-1-6. On February 9, 2012, the juvenile court issued its order finding B.A. to be a CHINS under Indiana Code section 31-34-1-1. The order stated in pertinent part:

4. DCS filed the CHINS petition under I.C. 31-34-1-1 alleging that the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision.

5. [C.A.] concedes that [B.A.] is a [CHINS] but alleges that he is a [CHINS] under I.C. 31-34-1-6 because [B.A.] substantially endangers his own health or the health of another individual.

6. [C.A.] adopted [B.A.] when he was 8 or 9 and stated that [B.A.'s] behavioral issues began approximately 3 years ago. He states [B.A.] was hoarding food and trash in his room, and that his room was always messy. He described an incident where [B.A.] swung at him although he did not hit him. There were behavioral issues at all of the schools that [B.A.] attended in IPS, Carmel, and Washington Township. On at least one occasion [B.A.] threatened to kill himself or [C.A.].

. . . .

8. [B.A.] was in residential care at Resource when his government assistance expired. It was at that time that [C.A.] was approached to take [B.A.] into his home.

9. When he refused to take [B.A.] back into his home, the CHINS petition was filed. After the filing of the CHINS petition, [C.A.] no longer participated in [B.A.'s] therapy and no longer went to visit [B.A.]. [C.A.] claims that no one asked him to participate in [B.A.'s] therapy, but by his own admission, he did not ask to be involved in [B.A.'s] therapy either. Nor has he been to visit [B.A.] since the CHINS was filed.

10. [B.A.] is presently at Youth Opportunity Center in residential care in Muncie, Indiana. The length of time that [B.A.] needs to stay in

residential care is dependent on how long it takes him to reach his goals. [B.A.] does not wish to return to the care of [C.A.].

11. [B.A.] has mental health and behavioral issues and is therefore presently in residential care. By not participating in [B.A.'s] therapy, [C.A.] has shown an inability or refusal to provide for [B.A.]. [C.A.] has told on giving [sic] MCDCS case manager Laura Garcia that he is not willing or interested in visiting with [B.A.] or in participating [in] therapy. Though [B.A.] has behavioral issues, [C.A.] is refusing to participate in [B.A.'s] treatment and had not visited him, and has therefore abandoned the child.

*Appellant's App*. at 118-20. A disposition hearing was held on March 8, 2012. C.A. now appeals.

## DISCUSSION AND DECISION

Because a CHINS proceeding is a civil action, the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. Ind. Code § 31–34–12–3; *B.N. v. Marion Cnty. Dep't of Child Servs.*, 969 N.E.2d 1021, 1024 (Ind. Ct. App. 2012) (citing *In re N.E.,* 919 N.E.2d 102, 105 (Ind. 2010)). In considering the evidence supporting a CHINS determination when the juvenile court has made findings of fact and conclusions of law, we apply a two-tiered standard of review and may not set aside the findings or judgment unless they are clearly erroneous. *In re A.C.*, 905 N.E.2d 456, 461 (Ind. Ct. App. 2009) (citing *Parmeter v. Cass Cnty. Dep't of Child Servs.,* 878 N.E.2d 444, 450 (Ind. Ct. App. 2007)). We first consider whether the evidence supports the factual findings and then whether the findings support the judgment. *Id.* Findings are clearly erroneous when the record contains no facts to support them either directly or by inference, and a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.* We give

due regard to the juvenile court's ability to assess witness credibility and do not reweigh the evidence, instead we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Id.* While we defer substantially to findings of fact, we do not do so to conclusions of law. *Id.*

C.A. argues that the juvenile court erred when it found B.A. to be a CHINS under Indiana Code section 31-34-1-1. He contends that the evidence presented at the fact finding hearing did not show that B.A.'s "physical or mental condition was seriously impaired or seriously endangered *as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision.*" *Appellant's Br.* at 13 (citing Ind. Code § 31-34-1-1(1) (emphasis added)). Instead, C.A. asserts that the juvenile court should have found B.A. to be a CHINS under Indiana Code section 31-34-1-6 because B.A. is a danger to himself and others.

Indiana Code section 31-34-1-6 states:

A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1)     the child substantially endangers the child's own health or the health of another individual; and
(2)     the child needs care, treatment, or rehabilitation that:
(A)     the child is not receiving; and
(B)     is unlikely to be provided or accepted without the coercive intervention of the court.

C.A.'s contention that the evidence presented to the juvenile court actually proved the elements of Indiana Code section 31-34-1-6 and not section 31-34-1-1 is actually a request to

7

reweigh the evidence, which this court cannot do on appeal. *In re A.C.*, 905 N.E.2d at 461.

The juvenile court in the present case determined that B.A. was a CHINS according to Indiana Code section 31–34–1–1, which provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1)    the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
> (2)    the child needs care, treatment, or rehabilitation that:
>     (A)    the child is not receiving; and
>     (B)    is unlikely to be provided or accepted without the coercive intervention of the court.

C.A. concedes that B.A. was a CHINS and that B.A. needed care, treatment, or rehabilitation that he was not receiving or that was unlikely to be provided or accepted without the coercive intervention of the court. His only argument is that the evidence did not support the juvenile court's finding that B.A.'s physical or mental condition was seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of C.A. to supply B.A. with necessary food, clothing, shelter, medical care, education, or supervision under the Indiana Code section 31-34-1-1.

Here, the evidence presented showed that, when C.A. was notified that Resource was ready to discharge B.A. due to his government assistance expiring, he refused to pick up B.A. from the facility due to concerns for his own safety. C.A. refused to take B.A. back into his care and stated he would only take a "normal" B.A. back into his care. *Tr.* at 6. After the CHINS case was filed, the evidence showed that C.A. did not participate in B.A.'s treatment

8

at any point and did not ever go to visit him in the residential facilities. He told the DCS family case manager that he was not willing or interested in participating in therapy, in visiting B.A., or in reunification. *Id*. at 15, 16.

In his argument, C.A. relies on *J.H. v. Indiana Department of Child Services*, 967 N.E.2d 1066 (Ind. Ct. App. 2012) for support. There, a mother refused to pick up her daughter from a treatment facility, where she had been taken after a physical altercation with the mother, until the daughter received counseling. DCS filed a CHINS petition, and the daughter was adjudicated a CHINS. *Id*. at 1069. On appeal, a panel of this court reversed the adjudication, finding that the mother was addressing the daughter's behavioral needs. *Id*. at 1073. We find that case to be distinguishable from the present case. There, even though the mother initially refused to pick up the daughter from the treatment facility, she sought treatment for the child and contacted her primary care physician to obtain a psychological evaluation for the daughter when DCS was not able to do so for several months. *Id*. Here, C.A. was unwilling to participate in B.A.'s treatment.

We conclude that, under our standard of review, where we are required to consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment, the juvenile court did not err when it found that B.A. was a CHINS under Indiana Code section 31-34-1-1. The evidence presented supported the juvenile court's findings, and the court's findings supported the judgment. However, although we are constrained by our standard of review to not reweigh the evidence, we believe that sufficient evidence was also presented to support a finding that B.A. was a CHINS under Indiana Code section 31-34-1-6,

9

in that he substantially endangered his own health or the health of another individual. That issue was not the issue before the juvenile court, however, and it is not the issue that we review on appeal.

Affirmed.

NAJAM, J., and MAY, J., concur.