## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 06 2016, 5:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael J. Spencer
Monroe County Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of B.W. (Minor Child), A Child in Need of Services, | July 6, 2016 |
| | Court of Appeals Case No. 53A01-1511-JC-2023 |
| K.W. (Mother), | Appeal from the Monroe Circuit Court |
| *Appellant-Respondent,* | |
| v. | The Honorable Stephen R. Galvin, Judge |
| Indiana Department of Child Services | Trial Court Cause No. 53C07-1506-JC-336 |
| *Appellee-Petitioner* | |

**Kirsch, Judge.**

K.W. ("Mother") appeals the juvenile court's adjudication of her son, B.W. ("Child"), as a Child in Need of Services ("CHINS"). [1] Mother raises the following restated issue: whether the trial court's decision that Child is a CHINS was supported by sufficient evidence.

We affirm.

## Facts and Procedural History

Mother and J.K. ("Father") have three children. Two of their children, Ka.W. and Kh.W. (together, "Siblings"), were adjudicated to be CHINS in February 2015. In May of 2014, Ka.W. was found unresponsive and taken to Riley Hospital for Children ("Riley") where she was diagnosed with type 1 diabetes and admitted into the hospital. *Appellant's App.* at 21. Following Ka.W's discharge Mother and Father were required to regularly record and provide Riley with Ka.W.'s blood sugar levels so that the calculations for the appropriate amount of insulin could be updated to prevent diabetic ketoacidosis ("DKA"). *Id.*

---

[1] Child's father, J.K. did not participate in the appeal.

[4] On August 2, 2014, Ka.W. was again hospitalized due to DKA, but Mother believed a "cold" caused the hospitalization. *Id*. at 22. DCS removed Siblings from Mother's care on September 2, 2014 because she and Father failed to acknowledge the severity of Ka.W.'s condition. *Id*.

[5] Siblings were adjudicated to be CHINS due to the failure of properly maintaining Ka.W.'s diabetes and completing the diabetes education class, and Mother's failure to secure stable housing and employment. *Id*. at 107-09. On March 2, 2015, the juvenile court entered a dispositional order requiring Mother to participate in home-based management and therapy, maintain contact with her DCS family case manager, Sarah Santoro ("Santoro"), notify Santoro of any changes in her address, maintain suitable housing for her family, and maintain a legal source of income. *Id.* at 99, 102-04.

[6] Mother gave birth to Child on June 21, 2015. DCS removed Child the next day. A Verified Petition Alleging Child in Need of Services for Child was filed on June 23, 2015, alleging Mother did not comply with the court ordered services. *Id*. at 85. Santoro testified that she was not able to regularly contact Mother by phone, did not know where Mother or Father resided, and that Parents "always became confrontational" and asked why she needed to know where they lived. *Tr.* at 86, 89.

[7] Santoro informed Mother of the basic needs of B.W. and Siblings, and what community resources and services were available to meet those needs for Child and Siblings to prevent removal of Child after he was born, but a periodic case

review held on July 8, 2015 determined that Mother did not comply with the dispositional order by failing (1) to show that she could adequately care for Siblings, (2) to improve her parenting abilities, and 93) to fully cooperate with DCS services.

[8] Melissa Richardson ("Richardson") testified that she supervised Mother's and Father's visits with Siblings since December of 2014 and with Child after he was born. *Id.* at 29-32. She further testified that Siblings exhibited "extreme behaviors" during the visits, and that although she asked the parents to plan structured activities for the visits to give Siblings something constructive to do, but parents did not do so. *Id.* at 33-34.

[9] Richardson also testified that she had to intervene during every visit because it was physically unsafe for Siblings, Mother, or Father. *Id.* Mother and Father were unable to implement the parenting training they had received to discipline Siblings during the visits. *Id.* at 38. Finally, although Mother and Father were supposed to bring food, diapers, bottles, quick-acting sugars (for Ka.W.), and other necessities for Child and Siblings, they never fully complied, and most importantly, did not supply food or diapers for Child. *Id.* at 32-33

[10] Elizabeth Lowry ("Lowry"), a therapist from Ireland Home Based Services, testified that Mother was mostly compliant and "like a rock star" during July of 2015, but that Mother did not remain consistent and fell into old habits of not doing her ordered services. *Id.* at 7, 79. As a result, Mother did not make any significant progress in therapy. *Id.* at 11. Mother also lost her source of income

in September of 2015 and was not employed at the time of the fact finding hearing on October 19, 2015. *Id*. at 7.

[11] On October 26, 2015, the juvenile court found that Mother did not comply with ordered DCS services to show she could safely care for Siblings, did not visit Siblings or Child enough, did not bring food and diapers for Child to any supervised visits, did not have a source of legal income, and did not have stable housing. *App*. at 58, 59. Based on these finding the court entered its order adjudicating Child as a CHINS.

## Discussion and Decision

[12] When determining whether sufficient evidence exists in support of a CHINS determination, we consider only the evidence most favorable to the judgment and the reasonable inferences therefrom. *In re T.S.*, 881 N.E.2d 1110, 1112 (Ind. Ct. App. 2008). This court will not reweigh the evidence or reassess the credibility of the witnesses. *Id*.

[13] The State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. Ind. Code section 31-34-12-3; *B.S. v. Marion Cnty. Dep't of Child Servs.*, 969 N.E.2d 1021, 1024 (Ind. Ct. App. 2012) (citing *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010)). Not every endangered child is a CHINS, permitting the State's *parens patriae* intrusion into the ordinary private sphere of the family. *See generally In re K.D.*, 962 N.E.2d at 1255 (Indiana 2012). Instead, a CHINS adjudication under Indiana Code § 31-34-1-1 requires three basic elements: that the parent's actions or inaction have

seriously endangered the child; that the child's needs are unmet; and (perhaps most critically) that those needs are unlikely to be met without State coercion. I.C. § 31-34-1-1. The final element guards against unwarranted State interference in family life, reserving that intrusion for families "where parents lack the ability to provide for their children," and not merely where they "encounter difficulty in meeting a child's needs." *Lake Cnty. Div. of Family & Children Servs. v. Charlton*, 631 N.E.2d 526, 528 (Ind. Ct. App. 1994).

[14] Where a juvenile court enters findings of fact and conclusions thereon, a reviewing court applies a two-tiered standard of review. *In re V.H.*, 967 N.E.2d 1066, 1072 (Ind. Ct. App. 2012) (internal citations omitted). A reviewing court considers whether the evidence supports the factual findings and then whether the findings support the judgment. *Id.* While a reviewing court gives substantial deference to a juvenile court's findings of fact, it does not apply the same deference to its conclusions. *Id.*

[15] Mother asserts that DCS failed to present any evidence that Child was endangered in her care, his needs were unmet, or that coercive State intervention was necessary to meet Child's needs

[16] Contrary to Mother's assertions, sufficient evidence was presented at the fact-finding hearing to for the trial court to conclude that Child's physical or mental conditions were seriously impaired or endangered, that Child needed care that he was not getting, and that Child was unlikely to get without coercive intervention of the court under Indiana Code section 31-34-1-1.

[17]     In *In re S.M.*, 45 N.E.3d 1252 (Ind. Ct. App. 2015), this court reversed four CHINS adjudications because "[t]he evidence in the record … [was] woefully insufficient" to show children were endangered, lacked food, shelter, or love and care.

[18]     Here, the Siblings had previously been adjudicated CHINS, Mother admitted that she did not have housing where she could stay with Child, and refused to inform DCS where she lived. Mother failed to provide for Child's basic needs—food and diapers for the visits and Mother was unable to care for Child. As a result, this case is readily distinguishable from *S.M.*

[19]     Here, the trial court relied on more than Siblings' adjudication as CHINS to adjudicate Child to be CHINS. The trial court found that Mother lacked stable housing, failed to have additional visits with Child, did not recognize the need to improve parenting skills, and did not acknowledge the reasons why Siblings or Child were removed. Mother's testimony that Ka.W. was hospitalized for a cold and that the subsequent removal of Siblings and DCS interactions were a result of that shows that she failed to acknowledge the severity of the situation. Mother and Father also failed to use the skills taught to improve their parenting techniques after Siblings were adjudicated to be CHINS.

[20]     CHINS statutes do not require that a court wait until a tragedy occurs to intervene. *Roark v. Roark*,  551 N.E.2d 865, 871 (Ind. Ct. App. 1990). Once the juvenile court concludes that a parent's action or omissions have created a CHINS condition the court may infer that such actions and condition would

continue in the absence of court intervention. *In re M.R.*, 452 N.E.2d 1085, 1089 (Ind. Ct. App. 1983) ("Having concluded that Mother's actions were detrimental to her children's well-being, the trial court was entitled to believe that such conduct would continue in the absence of court intervention."). Here, Mother had not made consistent progress from June 21, 2015, when she gave birth to Child, up until October 26, 2015, when Child was adjudicated to be a CHINS. We, therefore, conclude that the juvenile court did not err in adjudicating Child to be a CHINS.

[21] Affirmed.

[22] Riley, J., and Pyle, J., concur.