## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 04 2017, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Justin L. Froedge
Goebel Law Office
Crawfordsville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:

S.M. (Minor Child),

And

D.M. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

May 4, 2017

Court of Appeals Case No.
54A01-1612-JC-2795

Appeal from the Montgomery Circuit Court

The Honorable Harry A. Siamas, Judge

Trial Court Cause No.
54C01-1606-JC-190

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, D.M. (Father), appeals the trial court's Order adjudicating his minor child, S.M. (Child), as a Child in Need of Services (CHINS).[1]

We affirm.

# ISSUES

Father presents us with two issues on appeal, which we restate as:

(1) Whether the trial court abused its discretion by admitting certain exhibits pertaining to Father's oral drug screens; and

(2) Whether there was sufficient evidence to support the trial court's determination of the Child as a CHINS.

# FACTS AND PROCEDURAL HISTORY

S.D. (Mother) and Father are the biological parents of S.M., born on February 16, 2016. Since the birth of S.M., the parents had been residing together in Crawfordsville, Indiana. On June 13, 2016, the Indiana Department of Child Services (DCS) received a report regarding the Child, alleging that both parents were abusing substances while caring for S.M. and that Father was recently

---

[1] Mother is not participating in this appeal. However, facts pertaining to Mother are included where necessary for our decision.

released from jail where he had been incarcerated on a probation violation due to a failed drug screen for methamphetamine.

[5] Upon receiving the report, J.T. Chadd, Family Case Manager with DCS (FCM Chadd), made multiple attempts to contact the family. Eventually, on June 20, 2016, Father contacted FCM Chadd. That same day, FCM Chadd made an announced visit to the residence to meet the parents and observe the Child. Both parents denied the drug use and agreed to submit to oral drug screens, as administered by FCM Chadd in their residence. Father confirmed that he was recently released from jail, but denied the use of illegal substances. He informed FCM Chadd that he had recently taken a drug screen for his employer, which had tested negative.

[6] Father's oral drug screen, administered on June 20, 2016, returned positive for morphine. On June 23, 2016, FCM Chadd and Father met at the family home where Father continued to deny any drug use. In fact, Father alleged that "someone he used to be friends with may have slipped something in his drink because they were mad at him." (Transcript p. 37). That same day, Father agreed to take another oral drug screen, which returned positive for hydrocodone, a medication for which Father presented a prescription.

[7] On June 27, 2016, FCM Chadd met again with Father and Mother at the DCS office to address the positive drug screen and to develop a plan for the safety of the Child. Because Father reiterated that someone must have spiked his drink, DCS restricted Father's access to the home and the Child. Father agreed to

remove himself from the home, so the Child could remain in the residence with Mother. The following day, on June 28, 2016, the DCS filed its verified petition alleging Child to be a CHINS due to the substance abuse of Child's parents. On June 29, 2016, the trial court ordered the Child's continued placement with Mother, while Father was ordered to remain outside the home.

[8]     On July 7, 2016, an oral drug screen was administered to Father at the DCS office, which returned positive for amphetamine and hydrocodone. Father provided a valid prescription for hydrocodone. David Fissell, Family Case Manager with DCS (FCM Fissell), inherited the case from FCM Chadd on July 28, 2016. FCM Fissell recommended Father to participate at substance abuse intake at Wabash Valley and the treatment plan associated with that, as well as parenting classes, home based case management, and supervised visits. Father "vehemently denied" needing parenting classes. (Tr. p. 67). However, Father agreed to do the substance abuse intake and do the visits. Father completed the intake at Wabash Valley, and it was recommended that he participate in the intensive outpatient program and relapse prevention. An oral drug screen conducted on July 28, 2016, by FCM Fissell returned positive for amphetamine.

[9]     A drug screen performed on August 8, 2016, returned negative for drugs. At the time, Father also expressed that in his opinion the recommendation for a substance abuse program at Wabash Valley was "nonsense." (Tr. p. 68). Two days later, on August 10, 2016, FCM Fissell conducted a home visit with Mother. During the visit, Mother informed FCM Fissell that Father abuses

illegal substances. She advised FCM Fissell that "the morphine came from him working on a truck in Indy and he was paid in heroin." (Tr. p. 70). She also admitted that Father's positive screens for amphetamine came from using her prescription drugs.

[10] On August 19, 2016, Father returned for another oral drug screen. Father was agitated because he believed FCM Chadd was tampering with his drug screens and he wanted someone else to administer the tests. Father "believed that [FCM Chadd] was actually on drugs and was tampering with his drug screen by spitting in the drug screen himself because [FCM Chadd] is on drugs which was making his drug screens test positive." (Tr. p. 56). Father "brought in some glue with him which was actually some kind of like rubber cement or some kind of glue that he was requesting that he glue the label onto the drug screen with that glue[.]" (Tr. p. 56). The drug screen returned positive for hydrocodone, for which Father could not provide a prescription. Although Father initially participated in supervised visitations with the Child, there had been one or two cancellations and he had ceased all visits since September 21, 2016.

[11] On October 19, 2016, the trial court conducted a fact finding hearing where Mother entered an admission to DCS's allegations. On November 10, the trial court entered its Order, concluding Child to be a CHINS. The trial court found, in pertinent part, that

> Father has used controlled substances including
> methamphetamine, since the baby's birth. The child needs sober

caregivers or he is at risk. Parents will not participate in services without the coercive intervention of the court.

(Appellant's Rec. Appendix, p. 13).

Father now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Admission of Evidence*

First, Father contends that the trial court abused its discretion when it admitted the results of his oral drug screen over his objection as these drug screens were not administered in accordance with the protocol for such screens. The admission of evidence rests within the sound discretion of the trial court and is reviewed on appeal for an abuse of discretion. *In re Involuntary Termination of Parent Child Relationship of A.H.*, 832 N.E.2d 563, 567 (Ind. Ct. App. 2005). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

When an exhibit is offered for an evidentiary purpose, the exhibit must be separately authenticated pursuant to Indiana Evidence Rule 901. The Rule provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Absolute proof of authenticity is not required. *In re Paternity of B.B.,* 1 N.E.3d 151, 156 (Ind. Ct. App. 2013). When evidence establishes a reasonable probability that

an item is what it is claimed to be, the item is admissible. *Id.* Ind. Evid. R. 901(b) provides "[b]y way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule" and includes "(9) Evidence About a Process or System."

[15] During the evidentiary hearing, Bridget Lemberg (Lemberg), lab director at Forensic Fluids Laboratories, testified to the process used when administering oral drug screens. She explained:

> A test kit consists of a piece of paper called the chain of custody, a clear plastic specimen bag that's tamper proof when it's sealed and a collection device that's sealed. The donor is instructed to [] open the collection device. The donor is instructed to put the cotton pad in their mouth. First there's a ten minute observation period to make sure there isn't anything in the donor's mouth. The donor is instructed to place the cotton pad in their mouth to saturate the cotton pad, it has a plastic handle. Then to take it out after it is saturated by the handle, place it in a tube of buffer which keeps it stable for twenty-three days, place the lid on it and then place [sic] there's evidence sealing tape that's on the paperwork or the chain of custody that has a spot for the donor name and the date and it as a specimen ID on it. That sealed sample tube then goes into the clear plastic specimen bag, the paperwork or the chain of custody that the caseworker and the donor have signed and dated also goes into the clear plastic specimen bag then goes into a UPS bag that gets sealed and delivered to the laboratory the next day.

(Transcript p. 15). When DCS offered exhibits two, three, four, five, and six, containing Father's drug screen results, into evidence, Father objected based on a lack of foundation to authenticate the exhibits.

[16] With respect to exhibits two, three, and four, containing Father's drug screens collected on June 20, June 23, and July 7, 2016, by FCM Chadd, Father asserted that FCM Chadd had not abided by the ten-minute observation period necessary to ensure the donor's mouth is empty. During his testimony, FCM Chadd stated that prior to administering the oral drug screen, he had observed Father "for twenty to thirty minutes[.]" (Tr. p. 33). Accordingly, as the procedure was established for exhibits two, three, and four, the trial court properly admitted these exhibits over Father's objection.

[17] Next, DCS offered exhibit six, which contained Father's drug screen collected on August 19, 2016, by DCS Supervisor Harmony Jenson (Supervisor Jenson). Father objected, again claiming that the ten-minute observation period had not been followed. Supervisor Jenson testified that when people show up at the DCS office for a drug screen, "you just tell the folks to sit there in the waiting room . . . like ten or fifteen minutes" to make sure that they do not have anything in their mouth. (Tr. pp. 52-53). Supervisor Jenson clarified that they are observed by the clerk working the front desk that "they're not going in and out of our bathroom[.]" (Tr. p. 53). She added that there was no concern that Father had tainted his sample by having something in his mouth. After hearing the testimony, the trial court found that the procedure was substantially followed and admitted the exhibit. We agree.

[18]     Lastly, with respect to exhibit five, Father's July 28, 2016 drug screen administered by FCM Fissell, Father objected and argued that FCM Fissell had tainted the sample by handling "the vial or the tube in which the swab is inserted and taken out[.]" (Tr. p. 64). During the hearing, FCM Fissell explained that "[s]ometimes I do I do open the vial, it twists off. Sometimes when they have the swab in the mouth and they say they're done you know trying to do that one handed can be difficult so I will hold the bottom of the vial and twist the top off. I do not touch the inside of the vial or anything." (Tr. p. 63). After hearing this testimony, the trial court admitted exhibit five. We agree with the trial court's decision. Because FCM Fissell complied substantially with the procedure and merely twisted the top of the vial without touching the inside, he did not contaminate the sample. Accordingly, all contested exhibits were properly authenticated and admitted.

## II. *CHINS Determination*

### A. *Standard of Review*

[19]     DCS bears the burden of proving that a child is a CHINS by a preponderance of the evidence. *In re K.B.*, 24 N.E.3d 997, 1001 (Ind. Ct. App. 2015). In reviewing a CHINS determination, our court does not reweigh evidence or assess witness credibility. *Id*. We consider only the evidence in favor of the trial court's judgment, along with any reasonable inferences derived therefrom. *Id*. Further "a CHINS adjudication may not be based solely on conditions that

no longer exist. The trial court should also consider the parents' situation at the time the case is heard." *In re R.S.*, 987 N.E.2d 155, 159 (Ind. Ct. App. 2013).

[20] When a trial court, as here, enters findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), we may not set aside the findings or judgment unless they are clearly erroneous. *In re K.B.*, 24 N.E.3d at 1001. In our review, we first consider whether the evidence supports the factual findings and whether the findings support the judgment. *Id*. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Id*. at 1002. A judgment is clearly erroneous if it relies on an incorrect legal standard. *Id*. We give due regard to the trial court's ability to assess the credibility of the witnesses. T.R. 52(A). While we defer substantially to findings of fact, we do not do so for conclusions of law. *In re K.B.*, 24 N.E.3d at 1002.

## B. *Sufficiency of the Evidence*

[21] The purpose of the CHINS adjudication is to "protect the children, not punish parents." *In re A.I.*, 825 N.E.2d 798, 805 (Ind. Ct. App. 2005), *trans. denied*. When it is in the child's best interest, the State may exert its *parens patriae* power and intervene to safeguard the child's welfare. *In re K.B.*, 24 N.E.2d at 1002. However, trial courts must balance the child's needs against the due process rights of the parents. *Id*. To support a CHINS adjudication, the CHINS statute provides that DCS must establish that, before the child becomes eighteen years of age:

> (1) The child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) The child needs care, treatment, or rehabilitation that:
>
>> (A) The child is not receiving; and
>>
>> (B) Is unlikely to be provided or accepted without the coercive intervention of the court

Ind. Code § 31-34-1-1. "That final element guards against unwarranted State interference in family life, reserving that intrusion for families 'where parents lack the *ability* to provide for their children,' not merely where they 'encounter *difficulty* in meeting a child's needs.'" *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014).

[22] Father now challenges the sufficiency of the DCS's evidence supporting the conclusion that the Child is a CHINS. In essence, Father asserts that "[o]verall, the screens that the DCS has amassed do not show an abuse of substances by the Appellant, as they alleged in their petition, and therefore, do not meet their burden of proof in this case." (Appellant's Br. p. 11). He likens his situation to *B.N. v. Marion Cnty., Dept. of Child Servs.*, 969 N.E.2d 1021 (Ind. Ct. App. 2012), where we reversed the trial court's CHINS determination. We deemed it important that although the mother had been charged with possession of oxycodone and marijuana, the mother presented DCS with current

prescriptions for oxycodone and Xanax. *Id*. at 1023. She voluntarily submitted to drug screens, which all tested negative, and she voluntarily participated in home-based services. *Id*. The mother was employed and had taken care of an abusive situation. *Id*. at 1024. Accordingly, as the mother had been proactive in remedying her situation and participating with DCS, we concluded that there was no evidence to support the trial court's determination. *Id*. at 1026.

[23] We find *B.N.* to be inapposite to the case at hand. Unlike in *B.N.*, Father's drug screens were not all negative. In fact, Father had four positive drug screens for which he was unable to provide valid prescriptions. Although Father initially seemed receptive to participating in services, after an initial intake assessment at Wabash Valley, he changed his mind, determining the substance abuse determination to be "nonsense." (Tr. p. 68). He also "vehemently denied" needing parenting classes and refused to participate. (Tr. p. 67). Even though Father initially participated in supervised visitations with Child, he had not visited S.M. in almost a month prior to the fact-finding hearing.

[24] The CHINS statute does not require the trial court and DCS to wait until a child is physically or emotionally harmed to intervene; rather, a child may be determined to be CHINS if his or her physical or mental condition is endangered. *In re R.P.*, 949 N.E.2d 395, 401 (Ind. Ct. App. 2011). Children who are "endangered by parental action or inaction" are protected under the CHINS statute. *In re A.H.*, 913 N.E.2d 303, 306 (Ind. Ct. App. 2009). Here, we conclude that Father's positive drug screens and his refusal to participate in services, as well as his recent abandonment of the supervised visitations,

highlights his inability or refusal to properly care for the Child. *See, e.g., In re K.B.*, 24 N.E.2d at 1007. Accordingly, we cannot say that the trial court's adjudication of the Child as a CHINS is clearly erroneous.

# CONCLUSION

In light of the foregoing, we conclude that the trial court's Order adjudicating Child as a CHINS is not erroneous.

Affirmed.

Najam, J. and Bradford, J. concur