## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 05 2019, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissman
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Robert J. Henke
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Matter of D.C. and N.F. (Minor Children), R.W. (Mother), *Appellant-Respondent,* v. Indiana Department of Child Services, *Appellee-Petitioner.* | June 5, 2019 Court of Appeals Case No. 18A-JC-2564 Appeal from the Ripley Circuit Court The Honorable Ryan J. King, Judge Trial Court Cause Nos. 69C01-1805-JC-49 69C01-1805-JC-50 |

**Mathias, Judge.**

[1] The Ripley Circuit Court adjudicated D.C. and N.F., R.W.'s ("Mother") minor children, Children In Need of Services ("CHINS"). Mother appeals and argues that the evidence is insufficient to support the CHINS adjudication.

[2] We affirm.

## Facts and Procedural History

[3] Mother has two children, N.F. born June 2014 and D.C. born November 2017. N.F. and D.C. have different biological fathers. N.F.'s father, R.F., resides in North Carolina. In May 2018, Mother and the children were living with B.C. ("Father"), D.C.'s biological father. That month, Mother took five-month-old D.C. to the emergency room at a hospital in Batesville, Indiana, because maternal grandmother reported that D.C. would not kick with his right leg or put any weight on the leg. Emergency room personnel determined that D.C.'s right tibia was fractured. Because D.C. was not a mobile child, medical staff suspected child abuse and contacted the Department of Child Services ("DCS").

[4] Mother told the DCS family case manager that she left D.C. in the care of Father and maternal grandmother that morning because she had a doctor's appointment. Father was feeding D.C. when Mother left the home. Shortly thereafter, Father left for work, and D.C. and four-year-old N.F. were left in maternal grandmother's care.

[5] The family case manager interviewed Father and maternal grandmother, who could not explain how D.C.'s injuries occurred. Father stated that D.C. seemed fine when he left for work.

[6] Mother and Father then took D.C. to Cincinnati Children's Hospital where he was evaluated by Dr. Cathy Makoroff, a board-certified child abuse pediatrician. D.C.'s x-rays and skeletal survey established that the child had a metaphyseal corner fracture at the right distal tibia, a metaphyseal corner fracture at the left distal tibia, and suspected metaphyseal corner fractures at the medial aspect of the left distal femur and proximal tibia. Metaphyseal fractures "are fractures that are sort of at the very ends of the bones and the area called the metaphysis, [] which is sort of the growing end of the bone." Tr. pp. 36–37. There was also a bruise on the tip of the child's right ear. Dr. Makoroff concluded that the injuries most likely resulted from child abuse.

[7] Mother and Father were interviewed by two Indiana State Police detectives. During the interview, Father admitted that he could have squeezed D.C. harder than he should have when he was trying to burp him. Father also stated that he was frustrated that he worked long hours but still got up with the baby to feed him. Tr. p. 81. Mother told the officers that Father had bruised D.C.'s legs approximately two months prior and that she photographed the bruises but did not report the bruises to any medical or law enforcement personnel. Tr. p. 17. Mother denied that Father was abusive to her or to four-year-old N.F. Father stated that Mother was never violent with the children. The detectives did not believe that D.C.'s injuries were caused by being squeezed too hard.

[8]     As a result of the abuse, both D.C. and N.F. were removed from the parents' home and placed with maternal grandmother. On May 15, 2018, DCS filed a petition alleging that the children were CHINS. Specifically, the petition alleged that the children were CHINS under Indiana Code sections 31-34-1-1, 2, and 4. The petition alleged D.C. had multiple fractures to his legs, that Mother had not reported prior bruising observed on D.C.'s legs, and the injuries were not accidental. In the petition, DCS explained that "[f]amily services were not provided before the removal of the children" because "DCS was unable to provide efforts to prevent removal as a result of the emergency nature of the situation, in that the child [D.C.] had sustained significant injuries that could only have been caused by jerking[,] twisting or shaking him violently." Appellant's App. p. 28.

[9]     After several continuances for various reasons, a hearing was held on DCS's CHINS petition on August 27, 2018. Shortly thereafter, the trial court issued its order on the fact-finding hearing and concluded that D.C. and N.F. were CHINS because 1) D.C. "is a victim of child abuse resulting in significant injures to his legs (multiple fractures)[] while in the care and custody of his parents" B.C. and R.W., 2) D.C. "needs care, treatment, protection, or rehabilitation that he is not receiving and is unlikely to be provided without the coercive intervention of the court", 3) N.F. "lives in the same household with the exact same family composition as was contained when" D.C. "was injured", and 4) N.F. "needs care, treatment, protection, or rehabilitation that she is not receiving and is unlikely to be provided without the coercive

intervention of the court." *Id.* at 73. D.C.'s and N.F.'s placement with maternal grandmother was continued. Mother was allowed visitation subject to monitoring by maternal grandmother.[1] Father was not allowed visitation because of the no contact order issued by the court in case number 69D01-1808-F6-199, wherein he was charged with a Level 6 felony for the injuries he allegedly inflicted on D.C.

[10]     In addition, the dispositional orders for both children ordered Mother to comply with the following restriction:

> Not permit [Father] to have any access to or communication with you and the child, will abide by the terms of any no-contact order and/or protective order, and will cooperate fully with any prosecution for noncompliance. Immediately report to the Family Case Manager any attempts by [Father] to have access to or communicate with the child.

*Id.* at 96, 148. Furthermore, the court ordered that "[i]f the no-contact order is lifted in the criminal case all contact will be professionally supervised." *Id*. at 96, 149. Mother now appeals.

# Discussion and Decision

[11]     Mother challenges the sufficiency of the evidence to support the CHINS determination. When reviewing the sufficiency of evidence, we give due regard

---

[1] N.F.'s biological father, who lives in North Carolina, appeared via telephone at the dispositional hearing. DCS was attempting to establish therapeutic visitation between biological father and N.F. because he had not seen four-year-old N.F. for approximately two years.

to the trial court's ability to assess the credibility of witnesses. *In re Des.B.*, 2 N.E.3d 828, 836 (Ind. Ct. App. 2014). We neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the trial court's decision. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012).

DCS bears the burden of proving by a preponderance of the evidence that a child meets the statutory definition of a CHINS. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010).

> There are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS. DCS must first prove the child is under the age of eighteen; DCS must prove one of eleven different statutory circumstances exist that would make the child a CHINS; and finally, in all cases, DCS must prove the child needs care, treatment, or rehabilitation that he or she is not receiving and that he or she is unlikely to be provided or accepted without the coercive intervention of the court.

*Matter of M.W.*, 119 N.E.3d 165, 168 (Ind. Ct. App. 2019) (quoting *K.D.*, 962 N.E.2d at 1253) (citation omitted). Importantly, the purpose of a CHINS adjudication is not to punish the parents, but to protect the child. *In re A.I.*, 825 N.E.2d 798, 805 (Ind. Ct. App. 2005), *trans. denied*.

DCS alleged that D.C. and N.F. are CHINS under Indiana Code sections 31-34-1-1, 31-34-1-2, and 31-34-12-4. Appellant's App. pp. 26–27. Given the factual circumstances presented in this appeal, we address the CHINS adjudication for each child separately.

*A. D.C.*

The trial court found that D.C. is a CHINS "as defined by 31-34-1-1 and 31-34-1-2." Appellant's App. p. 72. Indiana Code section 31-34-1-1 provides that a child under eighteen years of age is a CHINS if:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and
> >
> > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

On the date DCS alleged that D.C. was a CHINS,[2] Indiana Code section 31-34-1-2 provided in pertinent part that a child under eighteen years of age is a CHINS if

> (1) the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent, guardian, or custodian; and

---

[2] The statute was amended on July 1, 2018 to add subsections (b) and (c).

(2) the child needs care, treatment, or rehabilitation that:

> (A) the child is not receiving; and

> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[16] The trial court found that D.C. was a CHINS because he "is a victim of child abuse resulting in significant injuries to his legs (multiple fractures); while in the care and custody of his parents[.]" Appellant's App. p. 73. The court then found that D.C. "needs care, treatment, protection, or rehabilitation that he is not receiving and is unlikely to be provided without the coercive intervention of the court." *Id.*

[17] Our General Assembly has created a rebuttable presumption that a child is a CHINS

> because of an act or omission of the child's parent, guardian, or custodian if the state introduces competent evidence of probative value that:

> (1) the child has been injured;

> (2) at the time the child was injured, the parent, guardian, or custodian:

> > (A) had the care, custody, or control of the child; or

> > (B) had legal responsibility for the care, custody, or control of the child;

(3) the injury would not ordinarily be sustained except for the act or omission of a parent, guardian, or custodian; and

(4) there is a reasonable probability that the injury was not accidental.

I.C. § 31-34-12-4.

[18] In other words, "[i]n cases where a child has injuries that suggest neglect or abuse, it shifts the burden to the party most likely to have knowledge of the cause of the injuries—the parent, guardian, or custodian—to produce evidence rebutting the presumption that the child is a CHINS." *Ind. Dep't of Child Servs. v. J.D.*, 77 N.E.3d 801, 807 (Ind. Ct. App. 2017), *trans. denied*.

[19] DCS presented evidence that Father intentionally caused the bruises and multiple fractures suffered by D.C. Medical personnel did not believe Father's explanation for the cause of the bruising and fractures, i.e. squeezing the child too hard while burping him. Dr. Makoroff testified that D.C.'s leg fractures were likely caused by pulling and twisting on D.C.'s legs or "a rapid flailing of the bones." Tr. pp. 52–53.

[20] Although Mother did seek medical treatment for D.C. when she was made aware that his legs were injured, on a prior occasion in March 2018, she observed significant bruising on D.C. but did not seek medical care. She merely documented the injuries by taking photographs. Father admitted that he had caused the prior bruising by squeezing D.C. Yet, Mother continued to leave D.C. in Father's care. The family case manager was also concerned that

Mother was "not able to . . . be honest about . . . the injuries that [D.C.] sustained[.]" Tr. p. 106.

[21] Mother did not present any evidence to rebut the presumption that D.C. is a CHINS. And the trial court was particularly troubled that Mother only took pictures and did not report the injuries Father inflicted on D.C. in March 2018. Tr. p. 120. For all of these reasons, we conclude that sufficient evidence supports the trial court's finding that D.C. "needs care, treatment, protection, or rehabilitation that he is not receiving and is unlikely to be provided without the coercive intervention of the court." Appellant's App. p. 73.

### B. N.F.

[22] The trial court found that N.F. is a CHINS "as defined by 31-34-1-1." Appellant's App. p. 72. As we noted above, this section provides that a child under eighteen years of age is a CHINS if:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

> (2) the child needs care, treatment, or rehabilitation that:

>> (A) the child is not receiving; and

>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[23] The trial court adjudicated N.F. a CHINS because she "lives in the same household with the exact same family composition as was contained when

[D.C.] was injured."[3] Appellant's App. p. 73. Therefore, N.F. "needs care, treatment, protection, or rehabilitation that she is not receiving and is unlikely to be provided without the coercive intervention of the court." *Id.* DCS's concern with regard to N.F. is that she lives in the same household as D.C. and could be injured. Appellee's Br. at 20.

[24] There is no evidence that either parent has ever caused injury to N.F. or that N.F. was present when D.C. was injured. However, on the date the CHINS petition was filed, Indiana Code section 31-34-12-4.5 provided that

> There is a rebuttable presumption that a child is a child in need of services if the state establishes that the child lives in the same household as an adult who: . . . (2) has been charged with an offense described in IC 31-34-1-3 or IC 31-34-1-3.5 against a child and is awaiting trial.

[25] Father was criminally charged with an unspecified Level 6 felony for the injuries he inflicted on D.C. Tr. pp. 95–96, 102, 117–18. The offense Father was charged with is likely one of the offenses enumerated in Indiana Code sections 31-34-1-3 or 31-34-1-3.5.

[26] Moreover, on July 1, 2018, approximately six weeks after the CHINS petition was filed in this case, the General Assembly amended Indiana Code section 31-34-1-2 and added subsection (c), which provides that a child is a CHINS if before the child is eighteen years old, the child "lives in the same household as

---

[3] However, at the dispositional hearing held on September 24, 2018, the court noted that in Father's criminal proceedings, the trial court issued a no contact order between Father and Mother, D.C. and N.F. Tr. p. 132.

an adult who . . . has been charged with committing" certain enumerated offenses "against another child who lives in the household and is awaiting trial" and "needs care, treatment, or rehabilitation that . . . the child is not receiving" and "is unlikely to be provided or accepted without the coercive intervention of the court."

[27] Our General Assembly has recognized, and we absolutely agree, that abuse to any child in a home endangers the other children living in the home.[4] For this reason, we affirm the trial court's order adjudicating N.F. a CHINS.

## Conclusion

[28] DCS presented sufficient evidence to establish that D.C. and N.F. are CHINS, and therefore, we affirm the trial court's CHINS adjudication.

[29] Affirmed.

Vaidik, C.J., and Crone, J., concur.

---

[4] We acknowledge that amendments to section 31-34-1-2 did not take effect until after the CHINS petition was filed in this case. Given that N.F.'s welfare is at stake and in the interest of judicial economy, we have considered that amendment in our resolution of this appeal.