

**FILED**
Nov 30 2015, 8:15 am
CLERK
of the supreme court,
court of appeals and
tax court

**ATTORNEY FOR APPELLANT**

Danielle L. Gregory
Indianapolis, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of: S.M., J.M., A.M., and H.G., Children in Need of Services,

A.M. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

November 30, 2015

Court of Appeals Case No. 49A02-1505-JC-377

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge
The Honorable Danielle P. Gaughan, Magistrate

Trial Court Cause No.
49D09-1412-JC-3106
49D09-1412-JC-3107
49D09-1412-JC-3108
49D09-1412-JC-3109

**Baker, Judge.**

[1]   Far too often, our public resources and agencies are called upon to intercede to protect the most vulnerable in our society—our children. The General Assembly has established a statutory procedure for determining when children are in need of the State's services and has specified the type of evidence required. In this case, however, the juvenile court found four children to be in need of services when the record is devoid of evidence supporting such a finding.

[2]   A.M. (Mother) appeals the juvenile court's order declaring her four children to be Children in Need of Services (CHINS). She argues that the evidence is insufficient to support the CHINS finding. We find the evidence wholly lacking and reverse.

## Facts

[3]   Mother is the mother of four children: S.M., born in 2008; J.M., born in 2009; A.M., born in 2010; and H.G., born in 2014. Father M is the father of S.M., J.M., and A.M., and Father G is the father of H.G.[1] In 2008, the Department of Child Services (DCS) substantiated allegations regarding domestic violence between Mother and Father M. In 2009, DCS substantiated allegations that

---

[1] Neither Father M nor Father G is participating in this appeal.

Mother had smoked marijuana while pregnant. In 2010, DCS substantiated allegations regarding domestic violence between Mother and Father G.

[4] On December 12, 2014, DCS filed a petition alleging that all of the children were CHINS after H.G.'s meconium tested positive for marijuana at the time of his birth. Mother tested negative for marijuana at the time of H.G.'s birth.

[5] A factfinding hearing was held on April 10, 2015. DCS stipulated that Mother began completing random drug screens in January 2015. She completed a screen approximately every two weeks. All of her screens, from beginning to end, were negative.

[6] Mother had also been participating in home-based therapy, with no evidence in the record that her participation was reluctant or unsuccessful. She had also completed a substance abuse assessment. She was cooperative with the assessor, reporting that she has used marijuana sporadically since she was a teenager. The assessor testified that Mother was "insightful" when she identified her marijuana use as a crutch. Tr. p. 17. Following the assessment, the assessor did not recommend that Mother participate in substance abuse treatment.

[7] Mother admitted that she used marijuana on one occasion while she was pregnant, but before she knew that she was pregnant. As soon as she learned that she was pregnant, she stopped smoking marijuana and did not use again during the duration of the CHINS case.

Mother was unemployed but had a second job interview scheduled at the time of the factfinding hearing. Father G helped Mother financially, and Mother also received food stamps. The children have always had a home, sufficient food, and sufficient clothing.

Father G has ongoing substance abuse issues. He also has an open CHINS case involving another child (Mother was not a part of that CHINS case) and was receiving services, including substance abuse treatment, through the other CHINS case. Mother and the children were living with Father G in his home. When his substance abuse became a problem, he voluntarily moved out of the home so that the children were not exposed to drug use. There is no evidence that Mother or Father G ever used drugs in the presence of the children or during a time in which the children were in their care. Father G paid the rent and utilities for the home; Mother's name was not on the lease. She testified that if Father G asked her to move out, she and the children would move to a shelter until she found a permanent residence. She testified that she could find and maintain housing and stability without DCS in her life.

Following the factfinding hearing, the juvenile court found all of the children to be CHINS. In pertinent part, the adjudication was based on the following reasoning:

> Mother has a history of substance abuse. [Father G] has had recent positive screens and has not completed [substance abuse treatment]. The home that Mother is living in with the children is [Father G's] home and Mother is not able to maintain that home without the assistance of [Father G]. [Father M] cannot

ensure the safety of his children while they are in the custody and care of Mother.

Appellant's App. p. 124. The juvenile court held a dispositional hearing on May 1, 2014, ordering Mother to participate in home-based therapy, home-based case management, and random drug screens. Mother now appeals.

# Discussion and Decision

## I. Standard of Review

[11] Mother argues that there is insufficient evidence supporting the CHINS adjudications. Our Supreme Court has explained the nature of a CHINS proceeding and appellate review of a CHINS finding as follows:

> A CHINS proceeding is a civil action; thus, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.R.,* 919 N.E.2d 102, 105 (Ind.2010). We neither reweigh the evidence nor judge the credibility of the witnesses. *Egly v. Blackford County Dep't of Pub. Welfare,* 592 N.E.2d 1232, 1235 (Ind. 1992). We consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. *Id.* We reverse only upon a showing that the decision of the trial court was clearly erroneous. *Id.*

> There are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS. DCS must first prove the child is under the age of eighteen; DCS must prove one of eleven different statutory circumstances exist that would make the child a CHINS; and finally, in all cases, DCS must prove the child needs care, treatment, or rehabilitation that he or she is not receiving and that he or she is unlikely to be provided or accepted

without the coercive intervention of the court. *In re N.E.,* 919
N.E.2d at 105.

*In re K.D.,* 962 N.E.2d 1249, 1253–54 (Ind. 2012) (footnote omitted).

[12] Our Supreme Court has cautioned that "[n]ot every endangered child is a child
in need of services, permitting the State's *parens patriae* intrusion into the
ordinarily private sphere of the family." *In re S.D.,* 2 N.E.3d 1283, 1287 (Ind.
2014). Here, DCS alleged that the children were CHINS pursuant to Indiana
Code section 31–34–1–1, which provides as follows:

> A child is a child in need of services if before the child becomes
> eighteen (18) years of age:
>
> (1)    the child's physical or mental condition is seriously
>        impaired or seriously endangered as a result of the
>        inability, refusal, or neglect of the child's parent, guardian,
>        or custodian to supply the child with necessary food,
>        clothing, shelter, medical care, education, or supervision;
>        and
>
> (2)    the child needs care, treatment, or rehabilitation that:
>
>        (A)    the child is not receiving; and
>
>        (B)    is unlikely to be provided or accepted without the
>               coercive intervention of the court.

[13] Our Supreme Court has interpreted this provision to require "three basic
elements: that the parent's actions or inactions have seriously endangered the

child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." *In re S.D.,* 2 N.E.3d at 1287.

[14] Additionally, DCS alleged that the children[2] were CHINS pursuant to Indiana Code section 31-34-1-10, which provides as follows:

> Except as provided in sections 12 and 13 of this chapter, a child is a child in need of services if:
>
> (1) the child is born with:
>
> (A) fetal alcohol syndrome; or
>
> (B) any amount, including a trace amount, of a controlled substance or a legend drug in the child's body; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> (A) the child is not receiving; or
>
> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

---

[2] Although this statute arguably applies only to H.G., for unknown reasons, DCS alleged *all* of the children to be CHINS under this statute as well.

Mother stipulated at the factfinding hearing that H.G.'s meconium tested positive for marijuana at the time of his birth.

## II.  Sufficiency

First, we will consider whether the adjudication is proper under Indiana Code section 31-34-1-1.  As noted above, it is DCS's burden to prove that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and that those needs are unlikely to be met without State coercion.  We find the evidence in this record wholly insufficient to support *a single one* of these elements.

First, there is *no* evidence in the record that at any point in time, any of the children were endangered.  It could be argued that H.G. was endangered when he was born with marijuana-positive meconium, but there is no evidence in the record showing *how*, specifically, marijuana-positive meconium endangered the child.  There is no evidence that the parents have ever used drugs in the presence of the children, or that there was ever an occasion in which they were impaired by substance abuse while the children were in their care.

Second, there is *no* evidence that the children have ever lacked food, shelter, or love and care.  In other words, there is no evidence of a single occasion when their needs were unmet.  Although there was concern about a possible future occasion in which Mother and the children would be asked to move out of Father G's home, at the time of the factfinding, that had not happened.  And

even if it were to happen, Mother had a contingency plan and was confident she could continue to meet their needs.

[19] The mere fact of an unemployed parent does not make a CHINS. The mere fact of a family on food stamps does not make a CHINS. Even the mere fact of a family living in a shelter while seeking stable housing does not make a CHINS. Here, those mere facts are the *only* facts (and one of them was merely a future concern rather than a present fact). The record is wholly devoid of a single example of the children's needs going unmet.

[20] Finally, there is *no* evidence in the record that their needs would not be met without State coercion. As already noted, their needs *were* being met—without State coercion. Mother was confident that she could handle life's twists and turns on her own, and there is no evidence in the record to undercut that confidence.

[21] Yes, Mother has a history of sporadic marijuana use. Yes, she has had prior DCS substantiations. But every single drug screen she provided during the CHINS case was clean. And her substance abuse assessment did not even recommend substance abuse treatment. There is no evidence in the record undercutting the testimony of Mother and Father G that she did not know she was pregnant with H.G. when she used marijuana or that she stopped using it as soon as she realized she was pregnant. A prior history—of substance abuse, or DCS contacts, or even crimes—in and of itself is not remotely sufficient to

uphold a CHINS.[3]  Here, that is essentially the primary reason for these CHINS adjudications.

[22]  The evidence in the record here is woefully insufficient to support these CHINS adjudications.  DCS failed to prove that the children's physical or mental condition were seriously endangered, that the parents were unable or unwilling to provide the children with the necessaries of life, that the children needed care or treatment that they were not receiving, or that the coercive intervention of the court was necessary.  The juvenile court erred in finding the children to be CHINS under this statute.

[23]  Turning next to Indiana Code section 31-34-1-10, as noted above, Mother stipulated that H.G.'s meconium was positive for marijuana at birth. Therefore, the first prong of this statute was met.  The second prong, however, requires DCS to prove that H.G. needs care, treatment, or rehabilitation that he was not receiving or that would be unlikely to be provided without the coercive intervention of the court.  As noted above, the record is devoid of evidence that H.G. needed any care, treatment, or rehabilitation that he was not receiving.  There is simply no evidence, anywhere, that this infant's needs were not being

---

[3] Father G admittedly has ongoing substance abuse issues.  However, he is already receiving substance abuse services through another CHINS case, and will continue to receive those services so long as that case remains open.  We note that when his substance abuse became a more significant issue, he voluntarily moved out of his own home to refrain from exposing the children to substance abuse.

met in every way. Therefore, we likewise find insufficient evidence supporting the adjudication under this statute.

[24] We are well aware that DCS and the courts are overwhelmed with the growing numbers of CHINS cases statewide. All would be better served if the system focused its time, efforts, and resources on the families who really need them. This one did not.

[25] The judgment of the juvenile court is reversed.

Bailey, J., and Mathias, J., concur.