## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 07 2018, 7:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anna Onaitis Holden
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:

S.T. and D.T. (Minor Children)

Children in Need of Services
and K.T. (Mother),

*Appellant-Defendant,*

v.

Indiana Department of Child Services,

*Appellee-Plaintiff*

March 7, 2018

Court of Appeals Case No.
49A05-1709-JC-2159

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Jennifer Hubartt, Judge Pro Temp

The Honorable Beth Jansen, Magistrate

Trial Court Cause Nos.
49D09-1702-JC-634, 49D09-1702-JC-635

**Altice, Judge.**

## Case Summary

K.T. (Mother) appeals from the trial court's order adjudicating her children to be Children in Need of Services (CHINS). On appeal, Mother argues that some of the trial court's findings are clearly erroneous and that its judgment is not supported by sufficient evidence.

We affirm.

## Facts & Procedural History

Mother has two children; S.T., born in September 2014, and D.T., born in March 2016 (collectively, the Children). This case marks the third time in the Children's short lives that the family has come to the attention of the Department of Child Services (DCS). DCS first became involved shortly after S.T.'s birth, when Mother admitted to using marijuana during her pregnancy. Mother agreed to an informal adjustment and was ordered to complete a substance abuse assessment and complete all resulting treatment recommendations. Mother failed to complete the substance abuse assessment, but the informal adjustment was nevertheless closed.

DCS conducted a second investigation shortly after D.T.'s birth because Mother had again used marijuana during her pregnancy. The investigation culminated in a CHINS finding with respect to both of the Children following

Mother's admission that the Children were CHINS because she "need[ed] assistance providing a safe, stable, and appropriate living environment free from substance abuse." *Exhibit Volume* at 5. The Children remained in Mother's care, and Mother was ordered to participate in home-based therapy and case management. Mother completed services and the CHINS case was closed.

[5] DCS began its third investigation in February 2017 after receiving an anonymous report concerning Mother and the Children. A DCS assessment worker spoke to Mother at the hotel where she was residing with the Children, and Mother denied the allegations in the anonymous report. Mother did, however, admit to using marijuana. As a result, DCS filed a petition alleging that the Children were CHINS, and the trial court ordered the Children removed from Mother's care. Thereafter, Mother exercised extended daily visitation with the Children in her home with pop-in supervision from a home-based case manager.

[6] A fact-finding hearing was conducted on June 15, 2017, and the trial court issued its order finding the Children to be CHINS on August 24, 2017. A dispositional hearing was held on August 24, 2017, and the trial court issued its dispositional order the same day. Mother now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

[7] On appeal, Mother challenges some of the trial court's findings of fact, as well as its determination that the Children are CHINS. Where, as here, a trial court

enters findings of fact and conclusions of law in support of its CHINS determination, we apply a two-tiered standard of review. *Parmeter v. Cass Cnty. Dep't of Child Servs.*, 878 N.E.2d 444, 450 (Ind. Ct. App. 2007). First, we consider whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* We will not set aside the findings or judgment unless they are clearly erroneous. *Id.* Findings are clearly erroneous when the record contains no facts to support them either directly or by inference, and a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.* While we defer to the trial court's findings of fact, we do not do so as to its conclusions of law. *Id.* Additionally, we will not reweigh the evidence; rather, we consider the evidence favorable to the judgment and draw all reasonable inferences in favor of the judgment. *Id.*

[8] We first address Mother's arguments that certain findings of the trial court are clearly erroneous. Mother first challenges the trial court's finding that "Mother had submitted to drug testing and she disputes the results." *Appellant's Appendix* at 145. Mother concedes that she disputed the results of one drug screen, but she argues that the trial court's finding is misleading because it suggests that she disputed the results of multiple drug screens. In other words, Mother does not dispute the finding itself, but its implication as she perceives it. This is not enough to establish that the finding was clearly erroneous. The record establishes that Mother disputed the results of at least one drug screen by claiming that the sample could not have been hers because it was negative for certain prescribed medication she had been taking at the time. This evidence

was sufficient to support the trial court's finding that Mother had submitted to drug testing but disputed the results.

[9] Mother also challenges two of the trial court's findings concerning the impact of her substance abuse on the Children. Specifically, the trial court found that "Mother has a history of drug use and that drug use has negatively impacted her ability to parent." *Id.* at 145. The trial court further found that "[d]ue to repeated involvement with this Court and DCS, the Court finds that Mother's substance abuse issues have yet to be successfully treated and pose a threat to the [C]hildren." *Id.* According to Mother, there is no evidence in the record to support a finding that Mother's marijuana use negatively affected her ability to parent or posed a threat to the Children. We disagree.

[10] In a previous proceeding, Mother admitted that her drug use negatively impacted her ability to parent. Specifically, she admitted that the Children were CHINS because she required assistance to provide them with a safe, stable, and appropriate living environment free from substance abuse. Moreover, Mother has never completed a substance abuse assessment or treatment, and she did not consistently submit to random drug screens during the DCS investigation in this case. At the fact-finding hearing, Mother testified that she had previously used marijuana to cope with stress and prevent stress-related seizures, but that she no longer needed marijuana because she had begun using "these little Chinese balls that you put in your hand" to relieve stress. *Transcript* at 33. The trial court specifically found that Mother's testimony that she had stopped using drugs was not credible. Being in the care of a parent who regularly uses illegal

drugs to cope with stress presents an obvious risk to a child, both because an intoxicated parent cannot provide adequate supervision and because the parent is at risk for arrest and incarceration. All of this evidence supports the trial court's findings that Mother's drug use has negatively impacted her ability to parent and poses a risk to the Children.

[11] Mother also challenges the trial court's finding that "Mother acknowledges that she recommended that the [C]hildren be put in the care of an adult and they were then injured by that adult." *Appellant's Appendix* at 145. Again, Mother does not challenge the finding itself, but its perceived implication. Mother does not dispute that DCS placed the Children with her friend, Kierra Hutchinson, at her request. Nor does Mother dispute that the Children suffered injuries while in Hutchinson's care, necessitating their removal and placement with a different caregiver. Instead, Mother argues that the trial court's finding suggests Mother exercised poor judgment by trusting Hutchinson, an assertion she claims is not supported by the evidence. But the trial court made no specific finding that Mother was in any way responsible for the injuries the Children suffered in Hutchinson's care, and we decline to look beyond the language of the finding itself. When taken at face value, the trial court's finding that the Children were injured while in the care of an individual Mother recommended is clearly supported by the evidence.

[12] We now turn our attention to Mother's argument that the trial court's CHINS determination in not supported by sufficient evidence. "Because a CHINS proceeding is a civil action, the State must prove by a preponderance of the

evidence that a child is a CHINS as defined by the juvenile code." *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). In reviewing the sufficiency of the evidence supporting a CHINS determination, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing therefrom. *In re J.L.*, 919 N.E.2d 561, 563 (Ind. Ct. App. 2009).

[13]     In this case, DCS alleged that the Children were CHINS pursuant to Ind. Code § 31-34-1-1, which provides that a child under the age of eighteen is a CHINS under the following circumstances:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[14]     Mother argues that the record is devoid of evidence to support trial court's finding that the Children's physical or mental conditions were seriously impaired or endangered as a result of Mother's marijuana use. On appeal, she likens the circumstances of this case to those presented in *In re K.S.*, 78 N.E.3d

740 (Ind. Ct. App. 2017), and *In re S.M.*, 45 N.E.3d 1252 (Ind. Ct. App. 2015), both of which we find distinguishable.

[15] In *K.S.*, this court reversed a CHINS determination based on a mother's marijuana use and allegedly unstable housing. 78 N.E.3d at 744. In doing so, the court reasoned that the mother had admitted to using marijuana two months before the child's birth to increase her appetite during pregnancy, but there was no evidence that this single use of marijuana had any negative impact on the child. *Id.* at 745. The court further explained that the trial court's finding that the mother lacked stable housing was unsupported by the evidence. *Id.*

[16] In this case, on the other hand, Mother had prior DCS contacts, including a prior CHINS adjudication, based on her use of marijuana during both of her pregnancies.[1] Mother admitted in the previous CHINS case that she was unable to provide the Children with a safe and stable environment free of substance abuse without the assistance of DCS. Mother participated in some services during the previous CHINS case, but she has nevertheless continued to use marijuana.

[17] In *S.M.*, this court reversed a CHINS determination based in part on the mother's use of marijuana while pregnant. 45 N.E.3d at 1253-54. In finding

---

[1] On appeal, Mother seems to suggest that the evidence established that she smoked marijuana during her first pregnancy only. We note, however, that Mother testified that both of the prior DCS interventions resulted from her marijuana use while pregnant.

the evidence insufficient to support the CHINS determination, this court noted that the mother had a history of sporadic marijuana use and prior DCS substantiations. *Id.* at 1256. The court noted further, however, that every drug screen the mother provided during the CHINS case was negative and that the mother had participated in a substance abuse assessment and no treatment was recommended as a result. *Id.* The court also noted that there was no evidence contradicting the mother's testimony that she had not known she was pregnant when she used marijuana and that she had stopped using marijuana as soon as she realized she was pregnant. *Id.*

[18] Unlike the mother in *S.M.*, Mother has not undergone a substance abuse assessment, and she did not consistently submit to random drug screens while the CHINS petition in this case was pending. Further, the trial court specifically found Mother's testimony that she had stopped using marijuana to be lacking in credibility.

[19] Mother used marijuana during both of her pregnancies and she admitted in the previous CHINS proceeding that she needed assistance in providing the Children with a safe, stable, and appropriate living environment free from substance abuse. Despite her two prior contacts with DCS, Mother has continued to use marijuana. It is of particular concern that Mother has never completed a substance abuse assessment and failed to consistently submit to drug screens during the pendency of the CHINS petition in this case. We also note that Mother testified that she relied on marijuana to cope with stress so severe that it caused her to suffer seizures, but that she no longer needed

marijuana because she was using "Chinese balls" to relieve her stress. *Transcript* at 33. The trial court did not find Mother's testimony that she had stopped using drugs to be credible. Mother's dependence on illegal drugs to manage her apparently extreme levels of stress, coupled with the Children's very young ages, support the trial court's finding that the Children's well-being was seriously endangered so as to support the CHINS determination.

[20] Judgment affirmed.

[21] May, J. and Vaidik C.J., concur.