## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 26 2020, 9:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT
Z.M. (FATHER)

Miriam Huck
Columbus, Indiana

ATTORNEY FOR APPELLANT
A.B. (MOTHER)

William Elliott Happel
Thomasson, Thomasson, Long &
Guthrie, P.C.
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Robert J. Henke
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re M.M. (Minor Child),

Z.M. (Father) and
A.B. (Mother),

*Appellants-Respondents,*

v.

Indiana Department of Child
Services,

*Appellee-Petitioner.*

October 26, 2020

Court of Appeals Case No.
20A-JC-1037

Appeal from the Bartholomew
Circuit Court

The Honorable Kelly Benjamin,
Judge

The Honorable Heather Mollo,
Magistrate

Trial Court Cause No.
03C01-1910-JC-5956

**Mathias, Judge.**

[1] Z.M. ("Father") and A.B. ("Mother") (collectively "Parents") appeal the Bartholomew Circuit Court's order adjudicating their minor child, M.M., a Child in Need of Services ("CHINS"). Parents argue that the CHINS adjudication is not supported by sufficient evidence.

[2] We affirm.

## Facts and Procedural History

[3] M.M. was born on May 24, 2019. On that date, the Department of Child Services ("DCS") received a report that Mother had a history of substance abuse and that the family was homeless. Parents denied both allegations, and a family case manager observed that they had a home with appropriate supplies for M.M. A new family case manager was assigned to continue investigation into the substance abuse allegations. Mother finally met with the case manager several weeks later.

[4] In June and July 2019, Parents tested positive for amphetamine and methamphetamine. Father's Appellant's App. p. 10. On July 22, 2019, Mother agreed to participate in an Informal Adjustment and was willing to engage in services to address her substance abuse issues. Father refused to participate in the Informal Adjustment.

[5] Mother missed her appointments for substance abuse treatment and failed to participate in family team meetings. In October 2019, the family case manager

made several unsuccessful attempts to communicate with Mother at her home. Also, in October 2019, without notifying her family case manager, Mother left M.M. in the care of M.M.'s paternal grandmother ("Grandmother"), who has a criminal history and history of substance abuse issues. Finally, on October 16, 2019, Mother admitted to the family case manager that she and Father were homeless.

[6] Therefore, on October 18, 2019, DCS filed a petition alleging that M.M. was a CHINS pursuant to Indiana Code section 31-34-1-1. DCS removed M.M. from paternal grandmother's care, and the child was placed in foster care. The petition noted that Parents also had an open CHINS case for their two older children, and they refused to engage in services to address their substance abuse in those proceedings.

[7] A fact-finding hearing was held on December 9, 2019. At that time, neither parent had a stable home or income, and they wanted M.M. returned to Grandmother's care. But due to her prior drug use and criminal history, DCS could not approve Grandmother as an appropriate placement. Ultimately, the trial court adjudicated M.M. a CHINS and found in relevant part:

> 7. Mother admitted to using methamphetamine after entering into the Informal Adjustment.

> 8. At the time of the Informal Adjustment, Mother and Father had an open CHINS case for two prior born children. Father and Mother were not engaged in required services, including substance abuse treatment.

9. At the Initial Hearing in the instant case, Father and Mother refused to submit to drug screens requested by DCS but both admitted that they would test positive.

10. Mother entered residential substance abuse treatment at Harbor Lights on November 14, 2019. She has completed detox treatment, inpatient treatment and is now in transitional housing.

11. Father is living at Brighter Days, a homeless shelter. He has been there approximately four to six weeks. Before that, Father admits that he was homeless.

12. Father is not currently looking for employment. He was last employed in 2017.

13. Mother plans to start looking for employment but has not yet done so.

14. Father does not have a driver's license.

15. Father admits that he has a substance abuse history with methamphetamine. Father reports that he [is] not using now. Father has an appointment with a substance abuse provider, TASC, on December 10, 2019.

16. Father is attending the POPS program and has attended five sessions to date. He reports that it is helping him understand bonds and attachments. If he regularly attends, he could have the program completed by December 19, 2019.

17. Father has a referral with Tara Treatment Center. He would first like to complete the POPS program before entering Tara for inpatient substance treatment.

18. Father had a positive screen for methamphetamine as recently as October 21, 2019.

19. Both parents are to be commended for entering programs where they are receiving assistance. Mother is to be commended for gaining sobriety and Father for starting services with the POPS program. These first steps are not sufficient to support dismissal of the instant cause. Mother and Father lack a home for [M.M.] to return to and lack a source of income to support the home.

20. Mother has only begun real substance treatment. Inpatient substance treatment is intended to provide stabilization so that an individual can then engage in ongoing outpatient substance treatment while returning to the community. Mother is just now ready to start that portion of treatment.

21. Father has unaddressed substance treatment needs.

22. The initial reasons that resulted in DCS involvement have not yet been adequately addressed.

Mother's Appellant's App. pp. 21–22; Father's Appellant's App. pp. 17–18.

[8]     At the Dispositional Hearing held on January 7, 2020, the trial court was encouraged by Mother's continued progress and sobriety. Mother was moving from inpatient treatment at Harbor Lights to a residential facility to continue her outpatient treatment. The trial court indicated that M.M. should be returned to Mother's care when deemed appropriate by DCS service providers. Parents were ordered to participate in services including continued substance

abuse treatment, random drug screening, and home-based counseling. Parents appeal the CHINS adjudication.

## Discussion and Decision

Parents argue that the CHINS adjudication is not supported by sufficient evidence. It is well-settled that

> [i]n all CHINS proceedings, the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. When reviewing a CHINS adjudication, we do not reweigh evidence or judge witness credibility and will reverse a determination only if the decision was clearly erroneous. A decision is clearly erroneous if the record facts do not support the findings or if it applies the wrong legal standard to properly found facts.

*V.B. v. Ind. Dep't of Child Servs.*, 124 N.E.3d 1201, 1208 (Ind. 2019) (citations and quotation marks omitted).

DCS alleged that M.M. was a CHINS pursuant to Indiana Code section 31-34-1-1, which provides that a child under the age of eighteen is a CHINS under the following circumstances:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision:
>
> (A) when the parent, guardian, or custodian is financially able to do so; or

> (B) due to the failure, refusal, or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> (A) the child is not receiving; and
>
> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[11] "That final element guards against unwarranted State interference in family life, reserving that intrusion for families 'where parents lack the ability to provide for their children,' not merely where they 'encounter difficulty in meeting a child's needs.'" *J.B. v. Ind. Dep't of Child Servs.*, 2 N.E.3d 1283, 1287 (Ind. 2014) (quoting *Lake Cty. Div. of Fam. & Child. Servs. v. Charlton*, 631 N.E.2d 526, 528 (Ind. Ct. App. 1994)). When considering this requirement, "courts should consider the family's condition not just when the case was filed, but also when it is heard." *Gr.J. v. Ind. Dep't of Child Servs.*, 68 N.E.3d 574, 580 (Ind. 2017) (quotations omitted). "Doing so avoids punishing parents for past mistakes when they have already corrected them." *Id.* at 581.

[12] Parents argue that DCS failed to present any evidence to prove that M.M. was seriously endangered by their substance abuse and homelessness. *See* Mother's Appellant's Br. at 12 ("Despite the fact that the hearing is supposed to be focused on the condition of the child, DCS presented no evidence as to how or if Mother's issues had any effect on" M.M.); Father's Appellant's Br. at 11.

("The Trial Court made twenty two (22) findings of fact and none mention the impact, if any, that parents' actions or inactions had on M.M.").

[13] Father's compares the facts in this case to *In re S.M.*, 45 N.E.3d 1252 (Ind. Ct. App. 2015), where our court reversed a CHINS adjudication because the mother's prior history of substance abuse did support the trial court's finding that the child was a CHINS. *Id.* at 1256–57. In that case, although the mother had a history of sporadic marijuana use and the child was born with marijuana positive meconium, each drug screen the mother provided during the CHINS proceedings was negative for illegal substances. *Id.* at 1256. The mother also stopped using marijuana when she realized she was pregnant. *Id.*

[14] Here, Parents have a significant history of illegal substance abuse, which was documented by DCS and the trial court due to the CHINS proceedings concerning Parents' two older children. Father continued to test positive for methamphetamine after the CHINS petition in this case was filed, and although he was enrolled in a parenting class, he had not started substance abuse treatment on the date of the fact-finding hearing. Mother continued to use methamphetamine while the Informal Adjustment was in place. On the date of the CHINS fact-finding hearing, Mother had been sober for over thirty days, and she continued to maintain her sobriety. Mother has taken significant steps toward treating her substance abuse issues and was finishing an inpatient substance abuse treatment program.

[15] However, neither parent had a home for M.M. On the date of the dispositional hearing, Mother was planning to transition to VOA housing in Indianapolis, a transitional housing program where M.M. could live with her. The trial court was encouraged by Mother's progress and stated that as soon as Mother had moved and the service providers agreed that it was appropriate, M.M. should be placed in Mother's care. After years of substance abuse, Mother was just entering the phase in her treatment where she would be required to maintain sobriety on her own. We are impressed with Mother's progress but agree with the trial court's concern that M.M. should not be returned to Parents' care until one or both parents is able to provide a sober and stable home environment.

[16] Moreover, M.M. was five months old when she was removed from Parents' care and was entirely dependent on Parents. As Parents note in their briefs, DCS did not prove that Parents used methamphetamine in M.M.'s presence. However, Parents admitted to, or tested positive for, methamphetamine multiple times after M.M.'s birth. Exposing a child to an environment of illegal drug use, particularly a child totally dependent on Parents for her care, endangers the child's mental and physical condition. *See In re Des.B.*, 2 N.E.3d 828, 837–38 (Ind. Ct. App. 2014) (citing *In re J.L.*, 919 N.E.2d 561, 564 (Ind. Ct. App. 2009)). Under the circumstances presented here, it is reasonable to assume that M.M. was in Parents' care and custody when they used or were under the influence of illegal substances.

[17] For all of these reasons, DCS proved that M.M. was seriously endangered by Parents' substance abuse issues and homelessness.

[18] Parents also argue that M.M.'s basic needs were being met because they left M.M. in paternal grandmother's care. Father's Appellant's Br. at 12; Mother's Appellant's Br. at 15. In support of this argument, Parents attempt to analogize the facts of this case to those in *In re S.K.*, 57 N.E.3d 878 (Ind. Ct. App. 2016). In that case, the father, who had custody of his four children, lost his job and had a period of housing instability. *Id.* at 880. Therefore, he arranged for the children to live with their mother. *Id.* On the date of the CHINS fact-finding hearing, the father had obtained stable housing. *Id*. at 882. While the children were in their mother's care, she tested positive for methamphetamine and amphetamine, but her subsequent drug screens were negative. *Id.* at 880. The evidence at the fact-finding hearing proved only an isolated use of methamphetamine. *Id*. at 883. There was also no evidence that the children needed care or treatment that would not be provided without coercive intervention of the court. *Id.* ("In fact, the parents took deliberate actions to avoid placing the children in the endangering condition of homelessness.")

[19] Unlike the circumstances in *S.K.*, Parents did not have stable housing on the date of the fact-finding hearing, and Grandmother was not an appropriate caregiver for M.M. During the period the Informal Adjustment was in place, Parents became homeless and left M.M. in paternal grandmother's care, violating the terms of the Informal Adjustment. Paternal grandmother's housing is not stable, and she was also homeless in December 2019. A few days before the fact-finding hearing, Grandmother moved into her sister's home, which is occupied by Grandmother's sister and her husband, sister's adult

children and their minor children. Grandmother sleeps in the living room because the other four bedrooms in the house are occupied.

[20] Importantly, Grandmother is also not approved for placement by DCS due to her criminal history. DCS initially placed Parents' two older children with Grandmother when those CHINS proceedings were initiated in 2017. However, the children were removed from Grandmother after she committed shoplifting while the children were in her care. Ex. Vol., p. 21. Grandmother also has a conviction for possession of methamphetamine. For these reasons, Parents knew that Grandmother was not an appropriate placement for M.M. This evidence is sufficient to prove that M.M.'s basic needs were not being met.

[21] Finally, Parents claim that the evidence is insufficient to support the trial court's finding that M.M.'s needs will not be met without the coercive intervention of the court. *See* Father's Appellant's Br. at 13 ("Many parents experience economic misfortune or substance issues, and so long as the child is being cared for by the parents or other responsible individuals there is no need for state intervention."); Mother's Appellant's Br. at 16–17 (acknowledging Mother's substance abuse issues and arguing that Parents' decision to place M.M. in paternal grandmother's care "shows that Mother is capable of making responsible decisions for the well-being of [M.M.], even when that means that [M.M.] will not be living with her").

[22] On the date of the fact-finding hearing, Parents were not able to provide a safe and stable home for M.M. Father has not addressed his substance abuse issues,

he did not have any income, and he was homeless. Mother was taking advantage of the services DCS offered and was making significant progress. But she was still in inpatient treatment in January 2020. On the date of the dispositional hearing, Mother was planning to move to transitional housing and continue outpatient substance abuse treatment. Baby M.M. is entirely dependent on her caregivers to provide for her needs. She requires a stable, sober home that Parents were not able to provide on the dates of the fact-finding and dispositional hearings.

[23] For these reasons, we conclude that DCS presented sufficient evidence that M.M.'s needs will not be met without the coercive intervention of the court.

# Conclusion

[24] The trial court's order adjudicating M.M. a CHINS is supported by sufficient evidence.

[25] Affirmed.

Bradford, C.J., and Najam, J., concur.