

IN THE

# Court of Appeals of Indiana

In the Matter of: R.M. and A.R. (Minor Children),
and M.C. (Mother),

*Appellant-Respondent*



FILED

Jun 23 2026, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

June 23, 2026

Court of Appeals Case No.
26A-JC-253

Appeal from the Decatur Circuit Court

The Honorable Timothy B. Day, Judge

Trial Court Cause Nos.
16C01-2510-JC-232
16C01-2510-JC-233

**Opinion by Judge Brown**

Judge Weissmann concurs.
Judge Kenworthy dissents with separate opinion.

**Brown, Judge.**

[1] M.C. ("Mother") appeals the trial court's order adjudicating her minor children, A.R. and R.M. (the "Children"), as children in need of services ("CHINS"). We reverse.

**Facts and Procedural History**

[2] Mother and J.R. are the parents of A.R., born in January 2023. Mother and K.M. are the parents of R.M., born in August 2025. In December 2024, the Department of Child Services ("DCS") received a report that alleged Mother was using marijuana in the home and exposing A.R. to THC. Mother was charged with possession of marijuana and, in January of 2025, A.R. tested positive for THC. DCS filed a CHINS petition in February 2025, which was later dismissed after A.R.'s hair follicle test came back inconclusive.

[3] When R.M. was born in August 2025, both Mother and R.M. tested positive for THC at the hospital. Mother admitted to vaping THC while pregnant and that she had been counseled about the potential risks of THC use during pregnancy. Shortly thereafter, DCS visited Mother's home and Mother admitted to continued THC use and to breastfeeding while using THC. Mother again tested positive for THC. DCS observed that the home had working utilities and running water as well as ample amounts of food and baby supplies.

[4] On October 27, 2025, DCS received another report of neglect due to concerns that Mother was using THC. DCS went to Mother's home, and she admitted that she continued to use THC. On October 28, 2025, DCS filed petitions alleging that the Children were CHINS due to exposure to THC. On November 7, 2025, a hair follicle test was conducted as to A.R. and showed positive results for THC. On November 24, 2025, DCS filed amended CHINS petitions to include the hair follicle results. In the amended petitions, DCS alleged that A.R. was a CHINS pursuant to Ind. Code § 31-34-1-1, and that R.M. was a CHINS pursuant to Ind. Code § 31-34-1-1 and Ind. Code § 31-34-1-10.

[5] The trial court held a factfinding hearing on December 16, 2025. DCS presented the testimony of Family Case Manager Chelsea Morgan ("FCM Morgan"), Family Case Manager Devyn Dewhurst, and Dr. Isaiah Steffen. Mother testified on her own behalf. Thereafter, the court adjudicated Children as CHINS based upon its finding: "1) Both [C]hildren have been exposed to THC." Appellant's Appendix Volume II at 135.

[6] The court held a dispositional hearing on December 29, 2025. On January 5, 2026, the court issued its dispositional decree. Among other things, the court ordered Mother to complete a substance abuse assessment and follow all treatments and recommendations. The court also ordered that both Mother

and the Children to participate in random drug screens. Mother filed her notice of appeal on January 30, 2026.[1]

## Discussion

[7] Mother asserts that the trial court clearly erred in adjudicating Children as CHINS. In reviewing a trial court's determination that a child is in need of services, we do not reweigh the evidence or judge the credibility of witnesses and consider only the evidence which supports the court's decision and reasonable inferences drawn therefrom. *In re S.D.*, 2 N.E.3d 1283, 1286-1287 (Ind. 2014), *reh'g denied*. As no statute expressly requires formal findings in a CHINS factfinding order and because neither party requested them under Ind. Trial Rule 52(A), we apply the two-tiered standard of whether the evidence supports the findings, and whether the findings support the judgment to any issue covered by the findings, and we review any remaining issues under the general judgment standard pursuant to which a judgment "will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id*. at 1287

---

[1] We observe that an entry in Indiana's Odyssey Case Management System ("Odyssey") dated March 24, 2026, indicates that a review hearing scheduled for April 2, 2026, was canceled. Odyssey also indicates that counsel for DCS filed a Request for Wardship Termination under lower court cause number 16C01-2510-JC-232 ("Cause No. 232"), which stated that: permanency for the child had been achieved through an approved reunification; Mother had shown negative drug screens and completed all requested services; CASA/GAL had been contacted and are in favor of wardship termination; and the case should be closed. On March 24, 2026, the trial court entered an Order on Wardship Termination under Cause No. 232 which ordered: "Jurisdiction in this matter is hereby terminated without prejudice and this cause of action is ordered closed. Any hearings currently scheduled in this matter are hereby vacated." A similar order was entered in lower court cause number 16C01-2510-JC-233 ("Cause No. 233"). Nevertheless, we decline to find this case moot and proceed to address the merits. *See In re S.D.*, 2 N.E.3d 1283, 1290 (Ind. 2014) (declining to find closed CHINS case moot and observing that a CHINS finding may have adverse consequences, including that "a CHINS finding can relax the State's burden for terminating parental rights").

(citation omitted). We will reverse a CHINS determination only if clearly erroneous. *In re D.J.*, 68 N.E.3d 574, 578 (Ind. 2017). A decision is clearly erroneous if the record facts do not support the findings or if it applies the wrong legal standard to properly found facts. *Id*.

[8] Ind. Code § 31-34-1-1 provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision:
>
>> (A) when the parent, guardian, or custodian is financially able to do so; or
>>
>> (B) due to the failure, refusal, or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[9] It is well-settled that "[n]ot every endangered child is a child in need of services, permitting the State's parens patriae intrusion into the ordinarily private sphere of the family." *S.D.*, 2 N.E.3d at 1287 (citation omitted). Rather, a CHINS adjudication under Indiana Code § 31-34-1-1 "requires three basic elements:

that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." *Id.*

[10] Ind. Code § 31-34-1-10 provides:

> Except as provided in sections 12 and 13 of this chapter, a child is a child in need of services if:
>
> (1) the child is born with:
>
>> (A) fetal alcohol syndrome;
>>
>> (B) neonatal abstinence syndrome; or
>>
>> (C) any amount, including a trace amount, of a controlled substance, a legend drug, or a metabolite of a controlled substance or legend drug in the child's body, including the child's blood, urine, umbilical cord tissue, or meconium; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; or
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

These statutes do not require a court to wait until a tragedy occurs to intervene. *In re A.H.*, 913 N.E.2d 303, 306 (Ind. Ct. App. 2009). Rather, a child is a CHINS when the child is endangered by parental action or inaction. *Id.*

[11] The trial court here made a single finding of fact in support of its CHINS adjudications: "1) Both [C]hildren have been exposed to THC." Appellant's

Appendix Volume II at 135.  Mother does not dispute this finding or the evidence supporting it.  Rather, as to the court's CHINS adjudication of both Children pursuant to Ind. Code § 31-34-1-1 (the "Neglect Statute"), Mother asserts that DCS failed to present any evidence that THC exposure has seriously endangered the Children, that the Children's needs are unmet, and that those needs are unlikely to be met without State coercion.  As to the court's CHINS adjudication of R.M. pursuant to Ind. Code § 31-34-1-10 (the "Controlled Substance at Birth Statute"), Mother asserts that DCS failed to present any evidence that R.M. needs care, treatment, or rehabilitation that she is not receiving or is unlikely to be provided or accepted without the coercive intervention of the court.  We must agree.

A.  *The Neglect Statute*

[12]  First, regarding the serious endangerment requirement of the Neglect Statute, our review of the record confirms that it is devoid of evidence in support of a finding of serious endangerment.  Although the evidence indicates that two-year-old A.R. tested positive for THC by hair follicle screen on November 7, 2025, DCS presented no expert testimony explaining how to interpret a hair follicle drug screen for a two-year-old child—including what window of exposure the test reflects, what level of THC is detected, or whether the positive result indicates extensive or minimal environmental exposure.  Indeed, when asked "[H]ow much THC would a two[-]year[-]old child have to be exposed to in order to test positive," Dr. Steffen responded, "I would have no idea."  Transcript Volume II at 58.  DCS also offered no testimony from any witness as

to how, specifically, the THC in A.R.'s hair endangered her or impacted her health, development, or well-being.

[13] As for R.M., while acknowledging that R.M. tested positive for THC at birth, when asked if R.M. was "unsafe" in Mother's care, Dr. Steffen opined, "No, if I had thought that I would not have let her leave the hospital." *Id.* at 59. Dr. Steffen confirmed that, based upon his observations, Mother was "doing great with the baby," and that R.M. "was born healthy and with no signs of withdrawal." *Id.* at 60. Dr. Steffen provided no testimony that R.M. was seriously endangered by THC exposure. Indeed, he described the science on prenatal and neonatal THC exposure as a developing field with studies lacking longevity and many confounding variables.

[14] We additionally observe that there was no evidence presented that Mother was impaired by THC use while caring for the Children. FCM Morgan testified that, although Mother admitted to ongoing THC use, she denied using THC "around the kids." *Id.* at 46. While FCM Morgan testified that she was "concerned" because she had been "educated" that "ongoing THC use in the presence of children or children ingesting THC, of any sort" possibly "can" have "long term effects," she admitted that "we don't know what the long-term effects of THC exposure" are, and she further admitted that she had never observed Mother to be "under the influence" while parenting the Children. *Id.* at 34, 43. Under the circumstances, we cannot say that DCS carried its burden to establish that Mother's actions or inactions seriously endangered the Children. *See Matter of A.M.*, 277 N.E.3d 972, 984 (Ind. Ct. App. 2026)

(confirming that a finding of serious endangerment requires more than just admitted drug use or a positive drug screen and agreeing with mother that "the mere fact [she] possessed marijuana when she was arrested (and presumably used marijuana with some frequency) cannot in and of itself support a CHINS determination"); *D.S. v. Ind. Dep't of Child Servs.*, 150 N.E.3d 292, 296 (Ind. Ct. App. 2020) (concluding that mother's admitted marijuana use and the family case manager's concern that "[i]llegal substance use impairs your thinking, your response, . . . your normal thought processes and action," without more, was not sufficient to support a CHINS determination); *Ad.M v. Ind. Dep't of Child Servs*, 103 N.E.3d 709, 713-714 (Ind. Ct. App. 2018) (reversing CHINS adjudication and holding that "evidence of one parent's use of marijuana and evidence that marijuana ha[d] been found in the family home, without more, does not demonstrate that a child has been seriously endangered for purposes of Indiana Code [s]ection 31-34-1-1"); *In re S.M.*, 45 N.E.3d 1252, 1256 (Ind. Ct. App. 2015) (reversing CHINS adjudication as to four children who were adjudicated CHINS after the youngest child's meconium tested positive for marijuana as there was no evidence showing how marijuana-positive meconium endangers a child, or any occasion the mother was impaired by substance abuse while caring for the children).

[15] Even assuming we were to conclude that DCS presented evidence of serious endangerment as to either of the Children, we find the record devoid of evidence indicating that the Children's needs are unmet, and that those needs are unlikely to be met without State coercion. The evidence indicates that

Mother has stable long-term housing and employment.[2] Mother further stated that she is voluntarily involved with the "Healthy Families" program through which a service provider comes to her home "once a week" to provide parenting education regarding "child development and safety," and that the provider also offered to aid her in obtaining food stamps. Transcript Volume II at 70.[3] Mother testified that the Children have no unmet medical needs and that each child was meeting their developmental milestones. In sum, the record indicates that the Children's needs are being met and DCS presented no testimony that either child had suffered any negative consequence related to THC exposure or Mother's THC use. Therefore, we conclude that the trial court clearly erred in adjudicating the Children as CHINS pursuant to the Neglect Statute.

B. *The Controlled Substances at Birth Statute*

Regarding the court's adjudication of R.M. as a CHINS pursuant to the Controlled Substances at Birth Statute, DCS correctly points out that the statute "does not include endangerment as an element that DCS must prove where a child is born with illegal drugs in their system." Appellee's Brief at 11. DCS notes that the record shows that "R.M. was born with THC in her urine" and

---

[2] Mother testified that she has lived in the same apartment for three years and that she is not in "any danger at all being evicted from that residence." Transcript Volume II at 67. Mother also testified that she is employed as a "shift manager" at McDonald's, and that she has been employed at McDonald's for approximately three years. *Id*. at 67-68.

[3] Mother testified that the program was "offered to [her] at the hospital as an option" following the birth of R.M. and that she "requested to be a participant in it." Transcript Volume II at 70.

therefore, "DCS only needed to show that R.M. needed care, treatment, or rehabilitation that she was not receiving or was unlikely to be provided or accepted without court intervention." *Id.* (citing Ind. Code § 31-34-1-10).

Again, we find the evidence lacking. As discussed above, the record indicates that R.M.'s needs are being met and DCS presented no testimony that R.M. had suffered any negative consequence related to Mother's THC use. Dr. Steffen opined that R.M. was safe in Mother's care and that she was born healthy and with no THC-related injuries or withdrawal symptoms. DCS presented no testimony that R.M. needed care, treatment, or rehabilitation that she was not receiving or was unlikely to be provided or accepted without court intervention. Therefore, we conclude that the trial court clearly erred in adjudicating R.M. as a CHINS pursuant to the Controlled Substances at Birth Statute.

For the foregoing reasons, we reverse the trial court's CHINS adjudications.

Reversed.

Weissmann, J., concurs.

Kenworthy, J., dissents with separate opinion.

ATTORNEY FOR APPELLANT

Amanda O. Blackketter
Blackketter Law, LLC
Shelbyville, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Grace C. Slaney
Deputy Attorney General
Indianapolis, Indiana

**Kenworthy, Judge, dissenting.**

As the trial court acknowledged when adjudicating A.R. and R.M. CHINS, "this is a close case legally[.]" *Tr. Vol. 2* at 92. And in close cases—cases in which the evidence could lead a court to grant or deny a petition—"the trial court is the one to make that call." *S.D. v. G.D.*, 211 N.E.3d 494, 496 (Ind. 2023) (quoting *S.D. v. G.D.*, 195 N.E.3d 406, 411 (Ind. Ct. App. 2022) (Altice, J., dissenting)). As an appellate court, we are not at liberty to reweigh the evidence or judge the credibility of witnesses—tasks at which our trial courts are "far better[.]" *Id.* Based on my review of the evidence favorable to the judgment per our standard of review, I would affirm the trial court's call and therefore respectfully dissent.

The evidence most favorable to the judgment reveals that a urine screen showed both Mother and R.M. were positive for THC shortly after R.M.'s birth in August 2025. Mother was "pretty honest" about her regular use of THC, both during her pregnancy with R.M. and after R.M.'s birth while Mother was breastfeeding, despite being warned of "potential consequences[.]" *Tr. Vol. 2* at 58. Hair follicle tests were subsequently done on Children. R.M.'s test was inconclusive because she did not have enough hair to test, but nearly three-year-

old A.R.'s test was positive for THC. And Mother testified A.R. tested positive "one other time." *Id.* at 73.

[22] When FCM Dewhurst conducted an assessment in October, Mother admitted using THC and said she was breastfeeding R.M. Mother told FCM Dewhurst she uses THC at work, not home, and keeps her THC vapes in her purse which she hangs on a hook above the stairwell. But FCM Dewhurst observed Mother's purse on the kitchen counter and THC vapes in a kitchen drawer. There was no child lock on the drawer, and the drawer was "[l]ikely" in reach of A.R. *Id.* at 55.

[23] FCM Morgan testified DCS had educated its employees on the long-term impact of THC exposure on children: "The ongoing long term effects can affect [children's] attention span, their memory, their executive functioning, their IQ, [and] put them at an increased risk for mental health [issues], anxiety, depression, and even psychosis." *Id.* at 43. She acknowledged that "[r]ealistically, we don't know what the long-term effects [on] these two minor children who are currently exposed to THC" will be, but declared their exposure is concerning. *Id.*

[24] Dr. Steffen, who provided prenatal care to Mother during her pregnancy with R.M. and cared for R.M. after her birth, testified that the "majority of data" from "lots of new studies" in this developing field "seems to be negative . . . in that [use of THC while pregnant] probably will have long term implications to both parents and their children's health." *Id.* at 57. He said he had "[n]ot yet"

seen negative implications in Children but explained "the reason why it's a developing field is because a majority of these things happen later in life. So [researchers] needed kids who have been exposed to develop and continue on in the studies to be able to draw those conclusions." *Id.* at 61. He said there were differing opinions about using THC while breastfeeding because the THC concentration in breastmilk versus smoke is unknown. Regardless, he "would not recommend utilizing marijuana around or while breastfeeding children." *Id.* at 57. He discussed this with Mother during her pregnancy, but Mother did not abide by his recommendation and continued to use THC, both throughout her pregnancy and while breastfeeding R.M. after her birth.

[25]  Mother admitted she has used THC products throughout the entirety of Children's lives, most recently a week before the hearing. She said she previously used in Children's presence but after the CHINS petition was filed, began to use only at work. *See Tr. Vol. 2* at 69. She said she stopped breastfeeding R.M. three weeks before the hearing. She testified to her active and willing participation in a Healthy Families program but said that program did not provide any services related to substance use. She does not "really like preventative medicine" and does not feel that taking her children for routine checkups is something she has to do because it is not required by law. *Id.* at 83. But if she felt they needed a doctor, she would take them. A.R. has not been to a pediatrician since she was a baby. R.M. was born at home; Mother took her to the doctor after she was born and then for her one-week and six-week checkups.

When asked if she could stop smoking THC, Mother replied, "If I wanted to? Yeah. I think I could." *Id.* at 81. She acknowledged she had not chosen to stop up to this point and said she didn't "really have an answer" for what it would take for her to stop smoking despite the prior CHINS petition and the current CHINS proceedings. *Id.* And importantly, when asked, "Do you believe that your children need services?," she replied, "**I do**." *Id.* at 68.

Here, as to endangerment, the trial court adjudicated Children CHINS in part because it "heard evidence, medical evidence, that the consensus is that exposure to marijuana by children could have long-term effects. It wasn't proved positive, by any means, but certainly the consensus sounds like that marijuana exposure of a child is not good for them on a long-term basis." *Tr. Vol. 2* at 91.[4] First, I note (as the majority does) that the trial court was not required to find proof of endangerment for R.M., a baby born substance exposed. *See* I.C. § 31-34-1-10(1)(c). As for A.R., DCS presented evidence she tested positive for THC in November 2025 and Mother acknowledged during the CHINS factfinding hearing A.R. had a second positive test during a

---

[4] The majority points out the shortcomings in DCS' evidence. *See* slip op. at ¶ 12 (noting there was no expert testimony interpreting A.R.'s positive hair follicle drug screen). And our cases have similarly pointed out since at least the late 1980s the lack of evidence of the effects of marijuana exposure on children. *See White v. State*, 547 N.E.2d 831, 838 (Ind. 1989) (DeBruler, J., dissenting) (noting, in a criminal neglect case, that the purpose of the statute is "protection of the physical well-being of dependents" and "there was no evidence presented that the active ingredient in marijuana is addictive or harmful to the health"); *cf. United States v. Amalfi*, 47 F.4th 114, 125 (2nd Cir. 2022) (recognizing "the continuing public health and safety issues associated with marijuana use" in a challenge to classification of marijuana as a Schedule I controlled substance) (quotation omitted). In this case, even if DCS could have provided additional evidence on the points the majority finds lacking, I conclude, as the trial court did, that it provided enough evidence to meet the preponderance standard for showing serious impairment or serious endangerment in this case.

previous interaction with DCS. A.R.'s father admitted at the initial hearing that A.R. was CHINS and expressed at the factfinding hearing his concern over Mother's "continued and ongoing chronic use of a substance even after being exposed to the potential ramifications of it either medically or legally." *Tr. Vol. 2* at 89. FCM Dewhurst testified there were THC vapes likely in A.R.'s reach when she visited Mother's home. FCM Morgan and Dr. Steffen testified to the possible negative long-term implications of A.R.'s exposure to THC. Both said they had not **yet** seen negative consequences in these Children, but because Mother does not take them for routine check-ups, there is no medical oversight of their condition. Although FCM Morgan testified Mother provided adequate food, clothing, and shelter for the children, when a parent uses drugs, she endangers her children in a variety of ways. *See In re D.L.*, 814 N.E.2d 1022, 1029 (Ind. Ct. App. 2004), *trans. denied*. As the majority acknowledges, the CHINS statutes do not require a court to wait until a tragedy occurs to intervene. *See* slip op. at ¶ 10 (citing *In re A.H.*, 913 N.E.2d at 306).

[28] The majority cites several cases reversing a CHINS determination because marijuana use "without more" does not prove endangerment. *See* slip op. at ¶ 14 (citing, *e.g.*, *D.S.*, 150 N.E.3d at 296). A common denominator in those cases is lack of evidence that children were exposed to marijuana use. *See D.S.*, 150 N.E.3d at 296 (noting DCS did not present any evidence the mother used marijuana while the child was in the home). But here, there is clear evidence that A.R. and R.M. were exposed to Mother's marijuana use, as they both tested positive for THC and Mother admitted using in their presence. *See Tr.*

*Vol. 2* at 90–91 (trial court noting it was "fully aware" of Court of Appeals decisions reversing a CHINS finding based primarily on marijuana usage, including one of its own cases, but stating in that particular case, "the child wasn't exposed to marijuana, it was just the mother testing positive" and noting "what I've got here is . . . not only a newborn child drug exposed, testing positive for THC, I have a toddler . . . also drug exposed, testing positive for THC"). I do not find those cases persuasive here.

[29] And as for the necessity of the coercive intervention of the court, the trial court concluded that "if it is that big of a problem" that Mother continued to use THC despite a prior DCS case and current evidence she had exposed her toddler and newborn child, "then the course of intervention of the court is necessary to try to . . . stop these kids from being marijuana exposed." *Id.* at 91–92. Mother has physical custody of both children and is the sole caregiver for these very young children when they are with her.[5] Mother said she had stopped breastfeeding R.M. and now only uses THC at work, but the trial court was not required to believe her. *See S.D.*, 211 N.E.3d at 499 ("[I]t is not our role to question [a] credibility determination."); *see also Tr. Vol. 2* at 92 (trial court stating that absent continued drug testing, "I don't see that we'll ever know" whether Mother stopped breastfeeding and otherwise exposing Children to THC). She has had three interactions with DCS in about a year—in late

---

[5] Mother testified A.R. has parenting time with her father from Wednesday afternoon to Friday afternoon every week. *See Tr. Vol. 2* at 82. And R.M.'s father is in the Department of Correction.

2024 when A.R. tested positive for THC, in August 2025 when R.M. was born testing positive for THC, and again in October 2025 when this case began. Mother was not cooperative with scheduling the hair follicle tests for Children; the provider had to reach out to her five times before they were able to schedule the tests. And during the hearing, Mother made no commitment to stop using THC, nor could she identify a reason compelling enough for her to do so. Despite multiple opportunities to do so, Mother has not changed her conduct on her own.

[30] Because a CHINS proceeding is a civil action, the State is required to prove by a preponderance of the evidence that a child is a CHINS as defined by statute. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012); I.C. § 31-34-12-3. A preponderance of the evidence is "simply . . . the greater weight of the evidence." *In re K.Y.*, 145 N.E.3d 854, 859 (2020) (quotation omitted). I believe the evidence favorable to the judgment supports the trial court's determination that A.R. and R.M. are CHINS by a preponderance of the evidence. I would affirm.